JANICE SUE JOLLY v. LORENZA WRIGHT

No. 22

(Filed 6 May 1980)

1. **Constitutional Law § 40— indigent's right to counsel—statute applicable only to criminal cases**

    The provisions of G.S. 7A-451(a)(1), entitling indigent persons to counsel in certain situations, apply only to criminal cases subject to Sixth Amendment limitations.

2. **Constitutional Law § 23— civil contempt for nonsupport—no due process right to counsel**

    Due process requires appointment of counsel for indigents in nonsupport civil contempt proceedings only in those cases where assistance of counsel is necessary for an adequate presentation of the merits, or to otherwise ensure fundamental fairness.

DEFENDANT appeals from an order of District *Judge Parker* dated 15 May 1979 and filed in the District Court of WAKE County.

The record discloses that on 26 May 1976 defendant signed a voluntary agreement to pay child support for his two-year old daughter in the amount of $25 per month. The agreement provided that the payments were to begin on 1 July 1976 and were to be made to the Clerk of the Superior Court of Wake County to be delivered to the Department of Human Resources for the care and benefit of defendant's dependent daughter. The voluntary support agreement, entered into pursuant to Chapter 110 of the General Statutes of North Carolina, was approved by a district judge who ordered that said agreement "henceforth shall have the same force and effect, retroactively and prospectively in accordance with the terms of said Agreement, as an Order of this Court and shall be enforceable and subject to the modification in the same manner as is provided by Law for Orders of this Court entered in child support cases." The order is dated 28 June 1976.

On 2 March 1979 a verified motion in the cause was filed by the Wake County Child Support Enforcement Agency alleging that as of 31 January 1979 defendant was $650 in arrears, and requesting issuance of an order to show cause why defendant should not be held in civil contempt. The court issued a show cause order which was personally served on defendant on 3

March 1979 giving him nineteen days advance notice to appear at 9 a.m. on 22 March 1979 and show cause, if any he had, why he should not be committed to jail for failure to comply with the lawful order of the court. The order also required defendant to bring with him his income tax returns for the last two years and all pay vouchers or other documents in his possession to show his income since 28 June 1976.

On the day of the hearing Wake-Johnston-Harnett Legal Services made a limited appearance and filed a motion for appointment of counsel in all civil contempt cases for nonpayment of child support instituted by Wake County and alleged, by affidavit, that defendant was indigent.

The court found numerous facts, including the following:

"8. That the character of the issues raised by this particular proceeding requiring the Defendant to show cause why he should not be held in civil contempt for failure to comply with the terms of the support order previously entered in this cause are of insufficient complexity for the Defendant to be prejudiced or treated unfairly by the refusal of the Court to appoint him legal counsel."

The court concluded as a matter of law that there is no constitutional mandate, state or federal, requiring court appointed counsel in every civil contempt case for nonpayment of child support instituted under Article IX of Chapter 110 of the General Statutes of North Carolina. The court further concluded that G.S. 7A-451(a)(1) creates no absolute right to court appointed counsel for indigents in civil contempt cases for nonpayment of child support.

The court thereupon denied the motion for appointment of counsel and defendant appealed to the Court of Appeals. Further action on the contempt citation was stayed during the pendency of the appeal, defendant having agreed to pay child support in the sum of $25 twice per month pending this appeal. Defendant indicated by affidavit that his net monthly income was $320.

We allowed motion to bypass the Court of Appeals and the case is now before this Court for initial appellate review.

*John C. Cooke, Assistant Wake County Attorney, for plaintiff appellee.*

*Wake-Johnston-Harnett Legal Services by Gregory C. Malhoit and M. Travis Payne, attorneys for defendant appellant.*

*Rufus L. Edmisten, Attorney General, by R. James Lore, Associate Attorney, for the State, Amicus Curiae.*

HUSKINS, Justice.

The sole question presented for review is whether an indigent defendant has a statutory or constitutional right to be represented by appointed counsel in civil contempt proceedings brought to compel compliance with outstanding child support orders.

Defendant asserts both a statutory and constitutional entitlement to appointed counsel. He relies on G.S. 7A-451(a)(1), the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and the Law of the Land provisions in Article I, Section 19 of the North Carolina Constitution.

We turn first to defendant's statutory claim. Defendant contends his entitlement to appointed counsel is granted in G.S. 7A-451(a)(1) which provides:

"(a) An indigent person is entitled to services of counsel in the following actions and proceedings:

(1) Any case in which imprisonment, or a fine of five hundred dollars ($500.00), or more is likely to be adjudged."

Defendant reasons that a civil contempt action is a "case in which imprisonment . . . is likely to be adjudged," and thus concludes that the instant case is encompassed by the plain language of G.S. 7A-451(a)(1). Plaintiff contends that consideration of the legislative and case law background against which G.S. 7A-451(a)(1) was enacted, and a contextual reading of subsection (a)(1) together with the other provisions of G.S. 7A-451(a), will demonstrate that the language in question refers only to criminal cases to which the Sixth Amendment is applicable. Resolution of these conflicting contentions requires us to interpret the statutory language in

question in light of the applicable canons of statutory construction.

The intent of the Legislature controls the interpretation of a statute. *Burgess v. Brewing Co.,* 298 N.C. 520, 259 S.E. 2d 248 (1979). In ascertaining the intent of the Legislature, it is proper to consider judicial decisions affecting the constitutionality of prior statutes dealing with the same subject matter, and legislative changes, if any, made subsequent to such decisions. *State v. Fulcher,* 294 N.C. 503, 243 S.E. 2d 338 (1978); *Milk Commission v. Food Stores,* 270 N.C. 323, 154 S.E. 2d 548 (1967); *Ingram v. Johnson, Comr. of Revenue,* 260 N.C. 697, 133 S.E. 2d 662 (1963). Word and phrases of a statute may not be interpreted out of context; rather, individual expressions must be interpreted as part of a composite whole, in a manner which harmonizes with the other provisions of the statute and which gives effect to the reason and purpose of the statute. *Burgess v. Brewing Co.,* supra; *In re Hardy,* 294 N.C. 90, 240 S.E. 2d 367 (1978); *Watson Industries v. Shaw, Comr. of Revenue,* 235 N.C. 203, 69 S.E. 2d 505 (1952). To this end, a statute must be construed, if possible, so as to give effect to every provision, it being presumed that the Legislature did not intend any of the statute's provisions to be surplusage. *State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975); *State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706 (1972).

[1]    Application of the above principles leads us to conclude that the provisions of G.S. 7A-451(a)(1) apply only to criminal cases. G.S. 7A-451(a) (1979 Cum. Supp.) constitutes the latest legislative determination of the scope of an indigent's entitlement to court appointed counsel. It lists thirteen distinct "actions and proceedings" in which such entitlement exists. The present statute significantly expands an indigent's entitlement to counsel beyond the realm of criminal prosecutions. Subsections (2) through (13) specifically list a variety of civil, administrative, and quasi-criminal proceedings in which the entitlement to counsel applies. This relatively recent expansion of the right to counsel embodied in subdivisions (2) through (13) of G.S. 7A-451(a) tends to obscure the .purpose and effect of subdivision (1) in the statutory scheme defining an indigent's right to court appointed counsel. A joint review of legislative history and case law developments in the area of the Sixth Amendment right to appointed counsel leaves no doubt that the purpose of subdivision (1) is to state the scope

of an indigent's entitlement to court appointed counsel in criminal cases subject to Sixth Amendment limitations.

As originally enacted in 1969, G.S. 7A-451(a)(1) provided in pertinent part:

"(a) An indigent person is entitled to services of counsel in the following actions and proceedings:

(1) Any felony case, and any misdemeanor case for which the authorized punishment exceeds six months imprisonment or a five hundred dollar ($500.00) fine. . . ." 1969 Session Laws, Chapter 1013, Section 1.

The language adopted by the General Assembly in 1969 codified the holding in *State v. Morris*, 275 N.C. 50, 165 S.E. 2d 245 (1969). In *Morris* we reviewed the Sixth Amendment decisions of the United States Supreme Court since *Gideon v. Wainwright*, 372 U.S. 335, 9 L.Ed. 2d 799, 83 S.Ct. 792 (1963), and concluded that the Sixth Amendment right to appointed counsel was applicable to all felony and misdemeanor cases where the authorized punishment exceeded six months in prison and a $500 fine. On June 12, 1972, the constitutional test for entitlement to court appointed counsel was once again changed by *Argersinger v. Hamlin*, 407 U.S. 25, 32 L.Ed. 2d 530, 92 S.Ct. 2006 (1972). In *Argersinger*, the United States Supreme Court held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U.S. at 37. On April 10, 1973, G.S. 7A-451(a)(1) was amended to its present form in order to reflect the new constitutional standard articulated in *Argersinger*. Accordingly, G.S. 7A-451(a)(1) now allows for appointment of counsel in "[a]ny case in which imprisonment, or a fine of five hundred dollars ($500.00) is likely to be adjudged."

It is clear, then, that the purpose of G.S. 7A-451(a)(1), as presently written, is to state the scope of entitlement to court appointed counsel in Sixth Amendment cases in light of current constitutional doctrine.[1] Use of the phrase "[a]ny case" is responsive

---

1. Legislation defining the scope of an indigent's entitlement to court appointed counsel in criminal cases has always reflected case law developments in the Sixth Amendment area. Former G.S. 15-4.1, enacted in 1949, codified the holding in

to the precise holding of *Argersinger*, which states that the Sixth Amendment precludes *imprisonment* of a person for "any offense," however classified, unless he was represented by counsel at his trial. The words "[a]ny case" in G.S. 7A-451(a)(1) must therefore be construed as any criminal case to which Sixth Amendment protections apply. It should be noted that the holding in *Argersinger* left undisturbed that portion of *State v. Morris, supra*, in which we held that the right to appointed counsel attaches in felony or misdemeanor cases where the authorized punishment exceeds a five hundred dollar fine. *See Argersinger v. Hamlin, supra*, 407 U.S. at 37. Accordingly, the current version of G.S. 7A-451(a)(1) carries over the provisions in the 1969 version granting entitlement to counsel in criminal cases where a fine in excess of five hundred dollars may be imposed.

We note, moreover, that a contextual reading of G.S. 7A-451(a) confirms our conclusion that the provisions of subsection (a)(1) have application only to criminal cases. As previously noted, G.S. 7A-451(a) lists thirteen distinct "cases and proceedings" in which the entitlement to court appointed counsel exists:

"(1) Any case in which imprisonment, or a fine of five hundred dollars ($500.00), or more, is likely to be adjudged;

(2) A hearing on a petition for a writ of habeas corpus under Chapter 17 of the General Statutes;

(3) A motion for appropriate relief under Chapter 15A of the General Statutes if the defendant has been convicted of a felony, has been fined five hundred dollars ($500.00) or more, or has been sentenced to a term of imprisonment;

(4) A hearing for revocation of probation;

(5) A hearing in which extradition to another state is sought;

---

*Powell v. Alabama*, 287 U.S. 45 (1932). See 1949 Session Laws, Chapter 112. G.S. 15-4.1 was amended in 1963 in response to the holding in *Gideon v. Wainwright*, 372 U.S. 335 (1963). See 1963 Session Laws, Chapter 1080, Section 1. In 1969 G.S. 15-4.1 was repealed and superseded by G.S. 7A-451(a), which is discussed in text.

(6) A proceeding for judicial hospitalization under Chapter 122, Article 7 (Judicial Hospitalization) or Article 11 (Mentally Ill Criminals) of the General Statutes and a proceeding for involuntary commitment to a treatment facility under Article 5A of Chapter 122 of the General Statutes;

(7) In any case of execution against the person under Chapter 1, Article 28 of the General Statutes, and in any civil arrest and bail proceeding under Chapter 1, Article 34, of the General Statutes;

(8) In the case of a juvenile, a hearing as a result of which commitment to an institution or transfer to the superior court for trial on a felony charge is possible;

(9) A hearing for revocation of parole at which the right to counsel is provided in accordance with the provisions of Chapter 148, Article 4, of the General Statutes;

(10) A proceeding for sterilization under Chapter 35, Article 7 (Sterilization of Persons Mentally Ill and Mentally Retarded) of the General Statutes; and

(11) A proceeding for the provision of protective services according to Chapter 108, Article 4, of the General Statutes;

(12) In the case of a juvenile alleged to be neglected under Chapter 7A, Article 23 of the General Statutes;

(13) A proceeding to find a person incompetent under Chapter 35, Article 1A, of the General Statutes."

The format of G.S. 7A-451(a) suggests that each numbered subdivision is intended to encompass a distinct type of proceeding for which court appointed counsel has been authorized. This is readily apparent from the legislative decision to define the scope of entitlement by individually listing each type of proceeding for which court appointed counsel is available. The structure of the statute thus calls for application of the maxim, *expressio unius est exclusio alterius, i.e.*, when certain things are specified in a statute, an intention to exclude all others from its operation may be inferred. *See generally, Campbell v. Church*, 298 N.C. 476, 259

S.E. 2d 558 (1979); *In re Sale of Land of Sharpe*, 230 N.C. 412, 53 S.E. 2d 302 (1949); *Old Fort v. Harmon*, 219 N.C. 241, 13 S.E. 2d 423 (1941).

Review of the numbered subdivisions in G.S. 7A-451(a) indicates that subdivision (1) is the only subdivision that has application to criminal cases. The remaining subdivisions specifically and separately list those civil proceedings for which court appointed counsel is authorized. Civil contempt cases are not included in this list. Significantly, two other types of civil cases, execution against the person and civil arrest and bail proceedings, in which, like civil contempt, an adjudication of imprisonment is likely, are listed in subdivision (7). Thus, a contextual reading of G.S. 7A-451(a) indicates that in subdivision (1), the legislative intent was to define the scope of entitlement to appointed counsel in criminal cases, and that in subdivisions (2) through (13), the intent was to list specifically those civil proceedings in which appointment of counsel was authorized. The failure to list civil contempt proceedings in subdivisions (2) through (13) must be construed as a legislative determination that appointed counsel for indigents is not authorized in such proceedings.

In summary, review of the legislative history and case law background against which G.S. 7A-451(a)(1) was enacted and analysis of the internal structure of G.S. 7A-451(a) both lead to the conclusion that G.S. 7A-451(a)(1) has application only to criminal cases subject to Sixth Amendment limitations. Accordingly, we hold that G.S. 7A-451(a) (1979 Cum. Supp.), as presently drafted, does not grant to indigent persons the right to be represented by appointed counsel in civil contempt proceedings.

It now remains for us to determine whether an indigent defendant has a constitutional right to be represented by appointed counsel in civil contempt proceedings initiated to compel compliance with outstanding child support orders.

The constitutional sources of an indigent person's right to appointed counsel are the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. Decisions of the United States Supreme Court indicate that the right to appointed counsel is stronger in Sixth Amendment cases than in noncriminal cases subject only to due process limitations. In *Argersinger v. Hamlin, supra,* the Court held that the Sixth Amendment right to ap-

pointed counsel attaches as a matter of law in any criminal prosecution where a defendant may be imprisoned. The emphasis in *Argersinger* on imprisonment as an event triggering an absolute Sixth Amendment right to counsel leads to the contention that the due process right to counsel is equally strong in civil cases where imprisonment is possible. In essence, the argument is that it would be improper to distinguish a civil proceeding from a criminal proceeding where the outcome of either may result in imprisonment. This contention was authoritatively rejected by the Court in *Gagnon v. Scarpelli,* 411 U.S. 778, 36 L.Ed. 2d 656, 93 S.Ct. 1756 (1973) (8-1 decision), handed down within a year of the decision in *Argersinger.*

In *Gagnon,* the Court refused to adopt a per se rule requiring appointed counsel as a matter of due process in *all* civil proceedings where the possibility of incarceration existed:

> "But due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed.
>
> In so concluding, we are of course aware that the case-by-case approach to the right to counsel in felony prosecutions adopted in *Betts v. Brady,* 316 U.S. 455, 86 L.Ed. 1595, 62 S.Ct. 1252 (1942), was later rejected in favor of a per se rule in *Gideon v. Wainwright,* 372 U.S. 335, 9 L.Ed. 2d 799, 83 S.Ct. 792, 93 A.L.R. 2d 733 (1963). See also *Argersinger v. Hamlin,* 407 U.S. 25, 32 L.Ed. 2d 530, 92 S.Ct. 2006 (1972). We do not, however, draw from Gideon and Argersinger the conclusion that a case-by-case approach to furnishing counsel is necessarily inadequate to protect constitutional rights asserted in varying types of proceedings . . . ."

411 U.S. at 788. According to *Gagnon,* whether due process requires an automatic or case-by-case approach to appointment of counsel depends on the type of proceedings under consideration. If the proceedings are informal in nature and if the legal and factual issues generally raised at such proceedings are not complex, then *Gagnon* suggests that the minimum requirements of due process may be satisfied by evaluating the necessity of counsel on a case-by-case basis. State appointment of counsel for indigents would thus be required at such proceedings only if needed to ensure fundamental fairness—the touchstone of due process—in

particular cases. *Id.* at 790. For example, appointment of counsel might be required where the legal or factual issues raised are difficult or of such complexity that the assistance of counsel is necessary for an adequate presentation of the merits, or where the defendant is unable to speak for himself. *Id.*

In North Carolina, civil contempt proceedings are without question civil in nature. G.S. 5A-21, *et seq.* and Official Commentary (1979 Cum. Supp.). The purpose of civil contempt is not to punish; rather, its purpose is to use the court's power to impose fines or imprisonment as a method of coercing the defendant to comply with an order of the court. *Duval v. Duval,* 114 N.H. 422, 322 A. 2d 1 (1974). Accordingly, defendant in a civil contempt action will be fined or incarcerated only after a determination is made that defendant is capable of complying with the order of the court. The imprisonment or fine is lifted as soon as defendant decides to comply with the order of the court, or when it becomes apparent that compliance with the order is no longer feasible. *See generally, Shillitani v. United States,* 384 U.S. 364, 16 L.Ed. 2d 622, 86 S.Ct. 1531 (1966); D. Dobbs Remedies § 2.9 (1973). The strictly coercive nature of civil contempt is often illustrated by invoking the image of the imprisoned defendant, who by virtue of his ability to comply with the court order, carries "the keys of [his] prison in [his] own pocket." *In re Nevitt,* 117 F. 448, 461 (8th Cir. 1902). In the recently enacted contempt statute, civil contempt is carefully defined along these lines. G.S. 5A-21, *et seq.* and Official Commentary. The new statutory definition of civil contempt makes clear that civil contempt is not a form of punishment; rather, it is a civil remedy to be utilized exclusively to enforce compliance with court orders. *Id.*

Given the civil nature of civil contempt, it follows that the Sixth Amendment right to counsel as set forth in *Argersinger* is inapplicable to civil contempt because that right is confined to criminal proceedings. Accordingly, if there is a right to counsel in a civil contempt action, its source must be found in the Due Process Clause of the Fourteenth Amendment in light of the principles enunciated in *Gagnon.*[2] *Accord, Sword v. Sword,* 399 Mich. 367, 249 N.W. 2d 88 (1976); *Duval v. Duval, supra.*

---

2. In the instant case, the limitations imposed by the Law of the Land provisions in Art. 1, § 19, of the North Carolina Constitution are identical to those of the

Jolly v. Wright

It now remains for us to determine whether due process requires automatic appointment of counsel for indigents in nonsupport civil contempt cases. In general, the legal and factual issues in such proceedings are neither numerous nor complex. Defendant's obligation to pay child support has been previously adjudicated. The existence and current effectiveness of the court order obligating defendant to pay child support can be determined by reference to court records. "The facts establishing the arrearage are bookkeeping matters and rarely are subject to substantial dispute." *Sword v. Sword, supra.* Inquiries as to whether the purpose of the order may still be served by compliance, defendant's ability to pay, reasons for the arrearage and mitigating circumstances normally are not complicated. The judge in most cases questions the parties in a relatively informal hearing. *Id.*

[2] Since the nature of nonsupport civil contempt cases usually is not complex, due process does not require that counsel be automatically appointed for indigents in such cases; rather, the minimum requirements of due process are satisfied by evaluating the necessity of counsel on a case-by-case basis. *Gagnon v. Scarpelli, supra,* 411 U.S. at 790. We thus hold that due process requires appointment of counsel for indigents in nonsupport civil contempt proceedings only in those cases where assistance of counsel is necessary for an adequate presentation of the merits, or to otherwise ensure fundamental fairness.

In *Gagnon v. Scarpelli, supra,* the United States Supreme Court held that indigent defendants are not entitled to automatic appointment of counsel in parole or probation revocation proceedings. It is worth noting that the potential loss of liberty in such cases is much more serious and extensive than in nonsupport civil contempt cases. Revocation of probation or parole generally spells commencement or resumption of a determinate, punitive sentence. In contrast, a person in civil contempt holds the key to his own jail by virtue of his ability to comply. Moreover, state involvement is much greater in probation or parole revocation proceedings than it is in nonsupport civil contempt proceedings. In revocation proceedings the State is the sole party capable of peti-

Due Process Clause. *See generally, Horton v. Gulledge,* 277 N.C. 353, 177 S.E. 2d 885 (1970).

tioning for punitive sanctions against defendant. In contrast, State initiation of nonsupport civil contempt proceedings comes about only if the State has become assignee of private child support rights. *See* G.S. 110-137. Thus, factually as well as legally, the result in the instant case is consistent with the holding in *Gagnon*.

Our research indicates that the precise question at issue has been definitively determined by the highest courts in four of our sister states. The Supreme Courts of Michigan and New Hampshire have held that due process does not require automatic appointment of counsel for indigents in nonsupport civil contempt proceedings. *Sword v. Sword, supra; Duval v. Duval, supra.* The Supreme Courts of Washington and Alaska have held to the contrary. *Tetro v. Tetro,* 86 Wash. 2d 252, 544 P. 2d 17 (1975); *Otton v. Zaborac,* 525 P. 2d 537 (Alaska 1974). In our view the Michigan and New Hampshire decisions are better reasoned. Accordingly, we follow the rationale of these courts and reach a similar result.

Finally, our holding here is limited to the precise questions posed. We express no opinion on the scope of an indigent's right to appointed counsel in criminal contempt proceedings.

For the reasons stated the order of the Wake District Court is affirmed. The case is remanded for further proceedings as provided by law and in accord with this opinion.

Affirmed.