**In re Steve YOUNG, Petitioner,**

v.

**William WHITWORTH, et al.,
Respondents.**

No. C–1–81–619.

United States District Court,
S. D. Ohio, W. D.

Sept. 25, 1981.

Michael O'Hara, Robert Newman, Legal Aid Society of Cincinnati, Cincinnati, Ohio, for petitioner.

Robert E. Taylor, Asst. Pros. Atty., Cincinnati, Ohio, for County.

Terrence R. Cosgrove, Asst. City Pros., Cincinnati, Ohio, for City.

### MEMORANDUM

HOGAN, Senior District Judge.

The petitioner filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 et seq. That petition was based on the failure of the juvenile judge to advise Young of his right to appointed counsel and to provide him with such counsel. Respon-

dent Whitworth is unable to answer the charges alleged by the petitioner. Respondent Court of Common Pleas, Juvenile Division, Hamilton County, Ohio (hereinafter respondent court or juvenile court)[1] has filed a motion to dismiss, apparently pursuant to Fed.R.Civ.P. 12(b)(6). Since we find that the petition states a claim on which the writ of habeas corpus can be granted, the motion of the respondent is denied.

## I.

Steve Young is the father of four children, ages four, two, one and two months. The mother of these children is Darlene Young. Prior to their ceremonious wedding on April 13, 1981, Darlene sought public assistance from the Hamilton County Welfare Department (hereinafter HCWD). In order to be eligible for the requested aid, Darlene was required to assign her rights of support to HCWD. See Ohio Public Assistance Manual § 8109. Beginning August 29, 1980, the petitioner was obligated to pay child support to HCWD. Because of unemployment, the petitioner was unable to pay this support.

In April, 1981, HCWD initiated proceedings against Steve Young. On April 14, 1981, Young was found in contempt of court. He was given a ten (10) day suspended jail sentence and ordered to pay HCWD seventy-five dollars ($75.00) per week.[2] Young was unrepresented. In June, 1981, a second hearing was held due to Young's failure to meet the obligations imposed by the April 16 order. Young was again without counsel and was not advised of his right to appointed counsel. The juvenile court ordered Young to serve thirty (30) days in the Cincinnati Correctional Institute.[3]

The instant petition followed and the respondent court seeks to have the petition dismissed. We can dismiss this petition only if it appears beyond doubt that the petitioner can prove no set of facts in support of his claim which would entitle him to relief. See *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1688, 40 L.Ed.2d 90 (1974). We find that if the petitioner was not advised of his right to appointed counsel, or that such counsel was not provided at his request, the due process clause of the fourteenth amendment was violated, and the petitioner would be entitled to a writ of habeas corpus. As such, the respondent's motion must be denied.

## II.

The issue before this Court, whether an indigent father cited for contempt of court for non-support can be jailed for such contempt if he was not provided counsel at the contempt hearing, is neither novel nor without dispute. Several state courts have dealt with the issue. Some, including Ohio, found no constitutional requirement that counsel be appointed in this type of case. See *Duval v. Duval*, 114 N.H. 422, 322 A.2d 1 (1974); *Sword v. Sword*, 399 Mich. 367, 249 N.W.2d 88 (1976); *In re Calhoun*, 47 Ohio St.2d 15, 350 N.E.2d 665 (1976); *Jolly v. Wright*, 300 N.C. 83, 265 S.E.2d 135 (1980); *Meyer v. Meyer*, 414 A.2d 236 (Sup. Jud.Ct.Me.1980); *Ex parte Wilson*, 559 S.W.2d 698 (Tex.Civ.App.1977). Others have held that the fourteenth amendment commands appointment of counsel. See *Otton v. Zaborac*, 525 P.2d 537 (Alaska Sup.Ct. 1974); *Tetro v. Tetro*, 86 Wash.2d 252, 544 P.2d 17 (1975); *Commonwealth ex rel. Brown v. Hendrick*, 220 Pa.Super. 225, 283 A.2d 722 (1971). One court found that its state constitution required counsel. *Brotzman v. Brotzman*, 91 Wis.2d 335, 283 N.W.2d 600 (1979). The Sixth Circuit has not decided this issue, recently refusing to decide it in deference to the state court under the doctrine of abstention. *Parker v.*

---

1. This party was added by an Order of this Court.

2. This amount represented the original payments plus an increase in the base support payment and payment on the arrearage.

3. The facts recited above have been stated in the manner most favorable to the petitioner for purposes of deciding the Rule 12(b)(6) motion before us. See *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

*Turner,* 626 F.2d 1 (6th Cir. 1980). With this diverse background of authority, we now undertake to determine whether the due process clause of the fourteenth amendment requires the provision of counsel in this case.

### A.

■ Due process analysis is bilateral. It must first be determined whether a protected liberty or property interest is at stake. See *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In this case such an interest is so clear as to require no further discussion. The next step is to determine what process is necessary for such an interest to be deprived. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). That issue is crucial before us today. In determining whether Young should have been provided with counsel, we must balance three factors:

1) the private interest that will be affected by the official action (Young's liberty),

2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, and

3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

See *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Lassiter v. Department of Social Services,* —— U.S. ——, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

■ Liberty is a lofty and majestic term. The concept of physical liberty is at the heart of democracy. In an atmosphere of expanding definitions of "liberty" and "property," physical liberty is often taken for granted as a protected interest, but what "liberty" is more rudimentary to our society than the freedom to move about without restraint. Chief Justice Burger pointed out the value of freedom in *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In *Mor-*

*rissey,* the Court was addressing the issue of parole revocation. The importance placed on the physical liberty of the parolee arose from his possession of "many of the core values of unqualified liberty . . ." *Id.* at 482, 92 S.Ct. at 2600. These "core values" have been protected vigorously by American courts whether the case is labeled criminal or civil. See *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); cf. *Lassiter v. Department of Social Services,* —— U.S. ——, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). An individual should not be deprived of physical liberty in the absence of a full panoply of procedures, including the appointment of counsel, unless competing interests absolutely require the elimination of such procedures. *Id.* 101 S.Ct. at 2158–59; but see *Parham v. J. R.,* 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979).

The potential for erroneous deprivation in a case such as this is very similar to the risk of an erroneous result in criminal cases. See *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). In *Argersinger,* Justice Douglas, writing for the majority, stated:

We are by no means convinced that legal and constitutional questions involved in a case that actually leads to imprisonment even for a brief period are any less complex than when a person can be sent off for six months or more.

*Id.* at 33, 92 S.Ct. at 2010. The potential thorny legal issues and difficult factual analysis led the Court to require counsel in juvenile proceedings. *In re Gault,* 387 U.S. 1, 36, 87 S.Ct. 1428, 1448, 18 L.Ed.2d 527 (1967). Circuit courts have apparently recognized the same problems in requiring counsel before a contemnor can be jailed. See *United States v. Anderson,* 553 F.2d 1154 (8th Cir. 1972); *In Re Di Bella,* 518 F.2d 955 (2d Cir. 1975); *United States v. Sun Kung Kang,* 468 F.2d 1368 (9th Cir. 1972); *In re Kilgo,* 484 F.2d 1215 (4th Cir. 1973).

■ The reduction of error related to misunderstanding of the law and lack of training in marshalling and analyzing facts can be accomplished by providing indigent parents with "the guiding hand of counsel." *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). Because of the extreme weight to be given to the petitioner's interest here, even a modest reduction in the potential for error in the deprivation of that interest justifies the imposition of appointed counsel.

■ There is a significant government interest in this case. It is in the public interest for parents to be required to provide adequate support for their children, thereby relieving society of that burden. It is also in the interest of both the public and the respondent court to have the mandates of that court obeyed by people within its jurisdiction. These interests will not be hindered by the requirement we impose today. When situations arise in which it is legitimate for a parent not to provide support, the public must be charitable and the courts flexible. We do not attempt to define such situations, but only to recognize that when factual and legal issues of this nature are involved the imposition of counsel will not infringe upon the interests mentioned above.

■ We must also be aware of the potential fiscal and administrative burden that will be imposed on the system by the requirement of counsel. It would be inane to try to understate the impact our ruling will have on state courts. The fiscal and administrative burdens accompanying this decision will be heavy. In this time of budget-cutting and tax reduction, these burdens may seem even more severe. We are, however, convinced that the fundamental nature of physical liberty requires the imposition of this burden.

### B.

Our conclusion today is supported by previous pronouncements of various courts in this country, some of which we have previously discussed. Three United States Supreme Court decisions shape our course.

Each of these cases alone leads logically to the result we have reached. Read together, that result is very nearly mandated. In *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Court held that the sixth amendment, as incorporated to apply to the states by the fourteenth amendment, required counsel in any case where the individual would be deprived of his physical liberty, whether charged with a felony or misdemeanor. The crucial aspect of the case was the deprivation of physical liberty. *In re Gault*, 389 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 527 (1967) required that a juvenile be given counsel in a case where the juvenile could be found delinquent and committed to a state facility. While juvenile proceedings are civil in nature, the Court, per Justice Fortas, could find no justification for requiring counsel in adult criminal cases under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and not requiring it when a juvenile faced the same fate. The deprivation, not the nature of the case, was controlling. 387 U.S. 1, at 34–42, 87 S.Ct. 1428, at 1447–51, 18 L.Ed. 527. Finally, just last term the Court decided *Lassiter v. Department of Social Services*, —— U.S. ——, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Justice Stewart, writing for the majority, stated:

The pre-eminent generalization that emerges from this Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation. Thus, when the Court overruled the principle of *Betts v. Brady*, 316 U.S. 455 [62 S.Ct. 1252, 86 L.Ed. 1595] that counsel in criminal trials need be appointed only where the circumstances in a given case demand it, the Court did so in the case of a man sentenced to prison for five years. *Gideon v. Wainwright*, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799]. And thus *Argersinger v. Hamlin*, 407 U.S. 25 [92 S.Ct. 2006, 32 L.Ed.2d 530] established that counsel must be provided before any indigent may be sentenced to prison, even where the crime is petty and the prison term brief.

That it is the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases, which triggers the right to appointed counsel is demonstrated by the Court's announcement in *In re Gault*, 387 U.S. 1 [87 S.Ct. 1428, 18 L.Ed. 527] that "the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency *which may result in commitment to an institution in which the juvenile's freedom is curtailed*," the juvenile has a right to appointed counsel even though those proceedings may be styled "civil" and not "criminal." *Id.*, at 41 [87 S.Ct. at 1451] (emphasis added). Similarly, four of the five Justices who reached the merits in *Vitek v. Jones*, 445 U.S. 480 [100 S.Ct. 1254, 63 L.Ed.2d 552] concluded that an indigent prisoner is entitled to appointed counsel before being involuntarily transferred for treatment to a state mental hospital. The fifth Justice differed from the other four only in declining to exclude the "possibility that the required assistance may be rendered by a competent layman in some cases." *Id.*, at 500 [100 S.Ct. at 1267] (separate opinion of Powell, J.).

Significantly, as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel. In *Gagnon v. Scarpelli*, 411 U.S. 778 [93 S.Ct. 1756, 36 L.Ed.2d 656] the Court gauged the due process rights of a previously sentenced probationer at a probation-revocation hearing. In *Morrissey v. Brewer*, 408 U.S. 471, 480 [92 S.Ct. 2593, 2599, 33 L.Ed.2d 484] which involved an analogous hearing to revoke parole, the Court had said: "Revocation deprives an individual, not of the absolute liberty properly dependent on observance of special parole restrictions." Relying on that discussion, the Court in *Scarpelli* declined to hold that indigent probationers have, *per se*, a right to counsel at revocation hearings, and instead left the decision whether counsel should be appointed to be made on a case-by-case basis.

Finally, the Court has refused to extend the right to appointed counsel to include prosecutions which, though criminal, do not result in the defendant's loss of personal liberty. The Court in *Scott v. Illinois*, 440 U.S. 367 [99 S.Ct. 1158, 59 L.Ed.2d 383] for instance, interpreted the "central premise of *Argersinger*" to be "that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment," and the Court endorsed that premise as "eminently sound and warrant[ing] adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel." *Id.*, at 373 [99 S.Ct. at 1161]. The Court thus held "that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." *Ibid.*

In sum, the Court's precedents speak with one voice about what "fundamental fairness" has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured. 101 S.Ct. at 2158–59.

While the lengthy quotation is clearly dicta as it applies here, the lesson is clear. In light of *Argersinger* and *Gault*, the deprivation of physical liberty presumptively injects the right to appointed counsel.

Other federal authority also seems to support the conclusion we have reached. The contempt cases discussed previously (supra at 762) are in many ways identical to the case before this Court. Again the overwhelming weight of the liberty interest at stake required counsel. This view appears to be uniform in cases where a person faces imprisonment for refusing to testify before a grand jury or refusing to comply with an Internal Revenue summons. See *Parker v.*

*Turner*, 626 F.2d 1, 2 n. 2 (6th Cir. 1980). We can find no justification for differentiation between those types of cases and the case at hand.

## C.

The respondent has raised several arguments which require our attention. It is argued that the *Lassiter* decision, while supporting the petitioner in dicta, is contrary to his position in result. While the *Lassiter* Court did choose to determine counsel in parental rights termination cases on a case-by-case basis, it does not require a different result here. The *Lassiter* result was in good part caused by the lack of any deprivation of physical liberty in that case. The presumption announced in *Lassiter*, and quoted previously in this decision (supra at 763, 764) was applied, and the *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), factors supported sustaining that presumption.

The respondent relies on three other cases: *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), *Parham v. J. R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), and *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The *Goss* case is fairly easy to distinguish from the instant one. In *Goss*, the Court held that some kind of notice and hearing were required before the suspension of a high school student. Counsel was not required. 419 U.S. at 583, 95 S.Ct. at 740. The distinction between *Goss* and the case at bar, is that the students were not deprived of physical liberty, only of their property right to an education and their liberty interest in their good reputation. *Goss* is neither stare decisis nor persuasive in determining the merit of the present case. The *Gagnon* decision is a bit more difficult, but still can be distinguished. The *Gagnon* Court held that counsel need not be appointed in every case for parole revocation hearings. In so holding, Justice Powell noted: (1) the presence of counsel would likely alter the nature of the revocation hearing, (2) the difference between criminal proceedings and revocation hearings, and (3) the limited na-

ture of the parolee's liberty. 411 U.S. at 787–790, 93 S.Ct. at 1762–63. The presence of counsel in the type of case at bar is not likely to substantially alter the nature of the proceedings. The *Gagnon* Court admitted that the juvenile situation in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 527 (1967) was functionally akin to a criminal trial. 411 U.S. 778, at 789 n.12, 93 S.Ct. 1756, at 1763 n.12, 36 L.Ed.2d 656. The case at bar is more akin to a criminal proceeding than to a parole revocation. Finally, the petitioner here has full-fledged liberty at stake, not the conditional liberty of a parolee. See *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972). We also find the respondent's reliance upon the *Parham* decision to be misplaced. The *Parham* Court stated that in the institutionalization of a child for mental health care due process required that a neutral factfinder inquire as to whether the statutory requirements for admission to the institution are satisfied. 442 U.S. at 606, 99 S.Ct. at 2506. The Court went on to say that no formal or quasi-formal hearing was required. *Id.* at 607, 99 S.Ct. at 2506. While *Parham* may be read to implicitly deny the need for counsel in that case, the special underlying parent-child relation dominates the case. The unusual competing interests and the Court's reluctance to interfere in the parent-child relationship are crucial in the outcome of the *Parham* case. 442 at 601–604, 99 S.Ct. at 2503–05. The competing interest in the instant case is not nearly so strong, nor is it non-adversary in nature. The Court deferred to parental judgment in *Parham* because it assumed that, as a general rule, the parent would act in the child's best interest. 442 U.S. at 604, 99 S.Ct. at 2505. Such is not the case here. The state is certainly not concerned with Young's best interest, but with those of the children. While that interest is commendable, it is adversary to the interest of the petitioner in the setting of a contempt hearing. Therefore, the *Parham* case is not helpful.

## III.

■ The conclusion this Court reaches in determining "what 'fundamental fairness'

consists of [in this situation] by first considering any relevant precedents and then by assessing the several interests that are at stake" *Lassiter v. Department of Social Services,* —— U.S. ——, ——, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640 (1981), is that when an indigent father is faced with imprisonment on contempt charges for nonsupport counsel must be provided to him. This result is compelled by the due process clause of the fourteenth amendment and its interpretation by the United States Supreme Court. For this reason, the motion of the respondent court to dismiss this petition for writ of habeas corpus is denied.