**COLLINS WHOLESALE DISTRIBUTING COMPANY, Plaintiff–Appellee,**

v.

**E & J GALLO WINERY, Defendant–Appellant.**

**No. 88–3097.**

United States Court of Appeals, Fourth Circuit.

Submitted Nov. 28, 1988.

Decided Feb. 13, 1989.

Rehearing and Rehearing In Banc Denied March 27, 1989.

E. Osborne Ayscue, Jr., Jonathan E. Buchan (Smith, Helms, Mulliss & Moore, on brief), for defendant-appellant.

T. LaFontine Odom, Joyce W. Wheeler (Weinstein & Sturges, P.A., on brief), for plaintiff-appellee.

Before PHILLIPS, MURNAGHAN and WILKINSON, Circuit Judges.

PER CURIAM:

Collins Wholesale Distributing Company, a rejected applicant for a wine distributorship, brought this action against E. & J. Gallo Winery, pursuant to the North Carolina Wine Distribution Agreements Act, N.C.Gen.Stat. §§ 18B–1200, *et seq.* (1983) (Act). The district court held Collins had standing to pursue its claim. We hold, pursuant to *Empire Distributors of North Carolina, Inc. v. Schieffelin & Co.*, 859 F.2d 1200 (4th Cir.1988), that Collins lacked standing to bring this action under the Act and reverse.

## I.

In January of 1986, plaintiff Collins Wholesale Distributing Company contracted with Southern Distribution Company, Inc., a distributor of defendant E. & J. Gallo Winery in North Carolina, for the purchase by Collins of Southern's distributorship. The contract was conditioned upon Collins successfully obtaining its appointment as a distributor from each of Southern's suppliers, including Gallo. After several interviews with representatives of Collins, Gallo denied Collins' request for appointment.

Collins thereupon brought action against Gallo in Mecklenburg County Superior Court alleging in Count I of its complaint that Gallo violated the North Carolina Wine Distribution Agreements Act, N.C.Gen. Stat. §§ 18B–1200, *et seq.* (1983), and in Count II that Gallo breached a common law duty codified by the Act. Collins also alleged other common law and statutory violations.

After removing the action to federal court, Gallo filed a motion to dismiss Counts I and II of Collins' complaint. Gallo asserted that Collins had no standing to assert a claim under the Act because plaintiff was not a "wholesaler," as defined by the Act, and was therefore not protected by the Act. The district court denied defendant's motion, concluding that "Collins is a 'wholesaler' under N.C.G.S. 18B–1206(2), and is entitled to the judicial protection of 18B–1207(a)." *Collins Wholesale Distributing Company v. E. & J. Gallo Winery*, 678 F.Supp. 593, 596 (W.D. N.C.1987). Defendant appeals under 28 U.S.C. 1292(b).

## II.

Collins asserts that Gallo, by unreasonably withholding its consent to the transfer of Southern's franchise to Collins, violated the North Carolina Wine Distribution Agreement Act. The pertinent provision provides:

(a) No winery may unreasonably withhold or delay consent to any transfer of the wholesaler's business or transfer of the stock or other interest in the wholesaleship whenever the wholesaler to be substituted meets the material and reasonable qualifications and standards required of the winery's wholesalers.

N.C.Gen.Stat. § 18B–1206(a) (1983). N.C. Gen.Stat. § 18B–1207(a) (1983), permits a "wholesaler" aggrieved under this section, to maintain a suit for damages and injunctive relief against the winery.

In *Empire Distributors*, Empire Distributors of North Carolina, Inc., a wine wholesaler, sought to enforce a wine wholesale distribution agreement between Schieffelin & Co., a winery, and another wine wholesaler, C & G Sales, which had been transferred to Empire without Schieffelin's prior consent. We rejected Empire's claim on the ground that "the Act does not grant standing to a prospective

transferee wholesaler, such as Empire, to challenge the refusal of a winery to consent to the transfer." 859 F.2d at 1203. We added that § 18B–1206 "is intended to protect wholesalers with existing wholesale distribution agreements with wineries, not prospective transferees of those agreements." *Id.* "[T]he remedies provided for in section 18B–1207 only implicate compensation to a wholesaler with a current distribution agreement." *Id.*

While Collins, unlike Empire, sought the prior consent of Gallo, the *Empire* case is plainly controlling here. The right created by § 18B–1206, and the corresponding duty on Gallo, extend to Southern, but not to Collins. The Act refers to the qualifications of the "wholesaler to be substituted" not for the purpose of creating any rights in favor of a prospective transferee, but for the purpose of conditioning the winery's right to withhold its consent to a transfer of business by an existing distributor. Southern, not Collins, was the party to seek Gallo's consent, and then pursue its remedies under the Act if consent were unreasonably withheld. Collins, of course, is not precluded from pursuing its other statutory and common law remedies, but the right created by § 18B–1206 extends only to Southern.

On the authority of *Empire Distributors of North Carolina, Inc. v. Schieffelin & Co.,* we reverse the judgment of the district court.

REVERSED.

MURNAGHAN, Circuit Judge, concurring:

I agree with the majority that *Empire Distributors of North Carolina, Inc. v. Schieffelin & Co.,* 859 F.2d 1200 (4th Cir. 1988), is binding authority in this Circuit and requires that we on the panel here hold that Collins Wholesale Distributing Company ("Collins") had no standing to sue for the alleged violations of N.C.Gen.Stat. § 18B–1206(a). However, I believe *Empire Distributors* was wrongly decided and, on that basis, I write separately to

urge the Court to rehear the present case *en banc* in order to correct *Empire Distributors'* erroneous interpretation of North Carolina law.

I.

*Empire Distributors*

*Empire Distributors* has taken an overly narrow view of standing, thereby weakening the deterrent effect of the civil remedy provision of the North Carolina Wine Distribution Agreements Act ("the Act"), N.C.Gen.Stat. § 18B–1200 *et seq.* In doing so, *Empire Distributors* has made it easier for wineries in North Carolina to impose unreasonable restrictions on wholesalers' freedom to sell their businesses to whomever they choose. Such a result directly contravenes the Act's purpose of "protect[ing] wine wholesalers against unfair treatment by wineries." § 18B–1200(b)(2).

Section 18B–1206(a) of the Act provides that a winery may not:

> unreasonably withhold or delay consent to any transfer of the wholesaler's business or transfer of the stock or other interest in the wholesaleship whenever the wholesaler to be substituted meets the material and reasonable qualifications and standards required of the winery's wholesalers.

The Act also allows a wholesaler to maintain a suit against a winery that violates § 18B–1206 or any other provision of the Act. N.C.Gen.Stat. § 18B–1207(a).

*Empire Distributors* held that § 18B–1206 "is intended to protect wholesalers with existing wholesale distribution agreements with wineries, not prospective transferees of those agreements." 859 F.2d at 1203.[1] Accordingly, the Court held that a prospective transferee who has no prior relationship with a winery has no standing to bring suit under § 18B–1207(a) for that winery's alleged unreasonable refusal to consent to a transfer of the distribution agreement. That ruling was in error.

---

1. That approach passes glibly in silence over the complication created by the inclusion in the statutory meaning of the word wholesaler the term "wholesaler to be substituted."

## A. *No Right of Prior Consent*

The *Empire Distributors* decision rests on a faulty premise, namely, that § 18B–1206 "implicitly grants a winery a right of prior consent to the transfer of its distribution agreement." 859 F.2d at 1203–04. If, in fact, the Act created the right of prior consent I would be more inclined to agree that only those wholesalers who are parties to existing distribution agreements, not prospective transferees or "wholesalers to be substituted", could sue for violations of the Act. However, the Act grants no right of prior approval, and, on those grounds, *Empire Distributors* is revealed as having been wrongly decided.

In finding a right of prior consent, the *Empire Distributors* panel adopted by reference the reasoning of the district court in that case. There, the district court found a right to insist upon unfettered prior consent for wineries, knocking out on lack of standing grounds all wholesalers who may have contracted to buy but have not already, in advance, the winery's consent. *See Empire Distributors of North Carolina, Inc. v. Schieffelin & Co.,* 679 F.Supp. 541 (W.D.N.C.1987). The district court did so by an attempt to compare the language of § 18B–1206(b) with that of § 18B–1206(a). *See id.* at 542. Section 18B–1206(b) provides that "[n]otwithstanding subsection (a), no winery may withhold consent to, *or in any manner retain a right of prior approval of,* the transfer of the wholesaler's business" to family members. (Emphasis supplied). The district court reasoned that "[b]y necessary implication, subsection (b) limits a right which subsection (a) grants, specifically, the right of prior consent." *Empire Distributors,* 679 F.Supp. at 542.

The reasoning of the *Empire Distributors* district court is flawed. Reading § 18B–1206(a) in conjunction with § 18B–1206(b) need not lead inevitably to the conclusion that the Act grants to wineries the right of prior consent except when the transferee is a family member. Instead, the better interpretation is that § 18B–1206 severely curtails (completely eliminating in the case of transfer to family members) any right to prior approval that the winery has obtained through a contract or by ukase. Section 18B–1206 merely restricts the winery's power to enforce such a provision. *See* § 18B–1200(c) (provisions of Act "may not be waived or varied by contract or agreement"). If the winery and wholesaler have not included a right of prior consent in their contract, the courts should not impose one upon the parties by reading into the Act requirements that were not expressly mandated by the state legislature.

It is illogical to interpret the Act as granting a right of prior consent, when the Act's purpose was so clearly to give added protection to wholesalers in general, not to expand the rights of wineries. The Act lists among its purposes the protection of wine wholesalers against "unfair treatment" by wineries, § 18B–1200(b)(2), and the provision of wine wholesalers "with rights and remedies in addition to those existing by contract or common law," § 18B–1200(b)(3). The Act does not state as its purpose the granting of greater rights or protections to wineries. In addition, most sections of the Act specifically impose prohibitions on wineries,[2] but place no comparable restrictions on wholesalers.

Perhaps most importantly, the Act provides a judicial remedy for a wholesaler when a winery violates the Act, but is altogether silent about a remedy for wineries should wholesalers violate the Act. *See* § 18B–1207. If, in fact, the Act imposed a duty on wholesalers to obtain the winery's consent before transferring its business to a third party, it seems likely that the judicial remedies portion of the Act would provide an explicit remedy for wineries when

---

**2.** *See, e.g.,* § 18B–1202 (forbidding coercion of and discrimination against wholesalers); § 18B–1204 (limiting the winery's freedom to cancel agreements with wholesalers); § 18B–1205 (requiring wineries to give 90-day notice of intent to terminate agreement; no comparable restrictions on wholesalers); § 18B–1206 (limiting winery's freedom to obstruct transfer of wholesaler's business); § 18B–1209 (retaliation by winery prohibited); § 18B–1211 (winery limited in freedom to discriminate among its wholesalers).

wholesalers failed to comply with that supposed duty.

In sum, the Act provides wineries no right of prior consent to a transfer of a distribution agreement to a third party. *Empire Distributors'* erroneous conclusion that such a right exists contributed to its mistaken view that prospective transferees of such agreements, in frustration of the wishes of would-be transferors as well, have no standing to sue a winery that violates § 18B–1206.

## B. *Lack of Incentive for Existing Wholesalers to Bring Suit To Enforce Act*

By denying standing to prospective transferees of wine distribution agreements, *Empire Distributors* has made it less likely that wineries that violate the Act will be held responsible for their unreasonable behavior. The prospective transferee will often have far greater incentive than an existing franchised wholesaler to bring suit when a winery violates the Act by unreasonably withholding consent to a transfer of a wholesaler's business.

The *Empire Distributors* holding leads to particularly undesirable results in cases in which the original wholesaler has already accomplished the transfer of its business to a third party. Once a wholesaler has completed the transfer of its business to a third party it has no incentive to file suit against a winery that subsequently refuses to do business with the transferee. Even if the original wholesaler had agreed to bring such a suit, it would probably litigate half-heartedly or at least not as vigorously as the transferee because the original wholesaler simply has no real financial incentive to expend the resources needed to obtain victory.

Even more troubling is the prospect that the original wholesaler might go out of existence after the transfer, as was the case in *Empire Distributors.* *See* 859 F.2d at 1203. Obviously, in such a case the original wholesaler could not bring suit; and since, under *Empire Distributors,* the transferee would have no standing, no one could pursue a judicial remedy for the winery's unreasonable behavior. Surely the North Carolina legislature, having so explicitly banned unreasonable withholding or delay of consent to a transfer, did not intend to allow a winery to escape all liability for unreasonable behavior under § 18B–1207 merely because it was notified by the wholesaling entity of the transfer after the fact, rather than before. The winery's reasonableness or unreasonableness is the same regardless of the timing of the notice of transfer.

The *Empire Distributors* standing rules inhibit judicial enforcement of the Act even when the original wholesaler has not yet effected transfer of part or all of its business. Although the original wholesaler in such a situation theoretically might have more incentive to sue a winery for a violation of § 18B–1206, in reality it will often have little or no inclination to do so.

An example will illustrate the problem. Suppose that a wholesaler wishes to sell its business to Party A. The winery, however, prefers that it be sold to Party B. The winery unreasonably refuses to agree to a transfer to Party A and instead demands that the wholesaler sell to Party B. The wholesaler will face many pressures to cave in to the winery, instead of filing suit under the Act. Even if the amount Party B is willing to pay is less than what Party A would pay, a lawsuit will not be worthwhile if the litigation costs are equal to or exceed the profits the wholesaler would lose by selling to Party B.

Furthermore, the wholesaler knows that, even if it sues and succeeds in forcing the winery to go along with the transfer, the prospective transferee may lose interest in the deal in the interim, especially if the transferee fears the prospect of dealing with a winery whose potential hostility has been exacerbated by losing litigation. In addition, litigation between a wholesaler and the winery may scare off other potential buyers. Faced with such pressures, the original wholesaler may decide the least dangerous route is to sell to Party B, the winery's choice. Only if the profits lost by such a sale substantially outweigh litigation costs would the wholesaler have in-

centive to file suit against the winery after the transfer agreement was entered.

As the example illustrates, the effect of *Empire Distributors* is to allow wineries to retain tremendous power to dictate the party to whom the wholesaler may sell its business. To avoid such a result, which the North Carolina legislature was clearly trying to prevent in passing the Act,[3] the Court *en banc* should confer standing on "wholesalers to be substituted", who are often the only parties who have the financial incentive to sue a winery that violates § 18B–1206. By conferring standing on such transferees, the Act would increase the likelihood that the Act's purposes will be served, and that wineries would bear some cost for their unreasonable behavior.

Granting standing to prospective transferees will, of course, lead to occasional cases in which the winery will be sued by both the transferee and the original wholesaler.[4] That is precisely the situation in the instant case, where both Collins and Southern Distributing Company, the original wholesaler, brought separate suits against E. & J. Gallo Winery. Subjecting wineries to the risk of multiple lawsuits would in no way be inconsistent with the purposes of the Act. The overall theme of the Act is to protect wholesalers, all wholesalers, from unfair action by wineries. The prospect of multiple lawsuits furthers the goals of the Act by enhancing the deterrent against unreasonable treatment of wholesalers.

It would be unworkable to adopt a standing rule that allowed a "wholesaler to be substituted" to sue under the Act only if the original wholesaler had decided not to bring suit. Such a rule would force some transferees to wait months or even years in uncertainty about their possible cause of action while the original wholesaler decided whether to sue. The Court should not inject such unpredictability and opportunity for underhanded practices into the law.

The standing rule that is most workable and most consistent with the purposes of the Act is one that allows any prospective transferee who suffers injury to sue under § 18B–1207 when the wholesaler contends that a winery has unreasonably withheld consent to a transfer of a wine distribution agreement to that transferee. Such a rule would make it more likely that wineries that have violated § 18B–1206 will face at least the threat of a lawsuit. Those who have not been unreasonable will have a ready defense at hand. Such threat of legal action will promote the Act's purposes by serving as a deterrent to unfair treatment of wine wholesalers.

## II.

### Collins Case

Even if the Court, *en banc*, should override *Empire Distributors'* refusal to allow a prospective transferee to bring suit, it must still decide whether Collins, the plaintiff in the instant case, is a "wholesaler" within the meaning of § 18B–1207(a). That section provides that "[i]f a winery violates any provision of this Article, a *wholesaler* may maintain a suit against the winery." § 18B–1207(a) (emphasis added). Thus, Collins may have no standing unless it qualifies as a "wholesaler."

The Act defines "wine wholesaler" as "any holder of a wine wholesaler permit, wine importer permit, or bottler permit issued under the authority of this Chapter," § 18B–1201(3), "unless the context requires otherwise." § 18B–1201. Collins had no such permit. *Collins Wholesale Distributing Co. v. E. & J. Gallo Winery*, 678 F.Supp. 593, 594 (W.D.N.C.1987). However, the district court in the present case reasoned that lack of a permit did not preclude Collins from being classified as a "wholesaler" because the Act grants authority to a court to depart from the strict statutory definition when the context in

---

**3.** It is hornbook law that a statute must be viewed as a whole and an excerpt of contradictory language, taken out of context, should not prevail over the meaning in its entirety. *See Jolly v. Wright*, 300 N.C. 83, 86, 265 S.E.2d 135, 139 (1980).

**4.** Occasional, because transferor and transferee may be expected to join forces and bring a single suit. Consolidation will frequently be possible.

which the term is used "requires otherwise." *Id.* at 595. Here was such a case.

The Act provides that "[n]o winery may unreasonably withhold or delay consent to any transfer of the wholesaler's business ... whenever the *wholesaler to be substituted* meets the material and reasonable qualifications and standards required of the winery's wholesalers." § 18B–1206(a) (emphasis added). Defining "wholesaler" in that section of the Act to include only permit holders would render the term "wholesaler to be substituted" virtually meaningless. One cannot obtain a permit in North Carolina without first holding a distribution agreement with a winery. *Collins*, 678 F.Supp. at 594, *citing* Subchapter 2, § 102, Regulations of the North Carolina Alcoholic Beverage Control Commission. Thus, if only permit holders could be "wholesalers" for purposes of § 18B–1207(a), only those proposed transferees that already held permits from other wineries could be considered "wholesalers to be substituted" under § 18B–1206(a). It seems highly unlikely that the North Carolina legislature failed to contemplate the possibility that a proposed transferee might be a newcomer to the business who had not yet obtained a permit but who intended to do so as soon as the proposed transfer was completed and he or she had obtained the necessary distribution agreement.

Another section of the Act demonstrates that the legislature intended the term "wholesaler" in some contexts to include persons without permits. The Act requires wineries to "make reasonable efforts to establish and maintain agreements with wholesalers who are females and members of minority groups." § 18B–1202(4). Surely the legislature intended such a provision to encompass efforts to reach out to minority enterprises that wished to enter the wine wholesale business but had not previously held a distribution agreement. Minority businessmen and women who had been denied access to the wholesale business because of historic discrimination would seem to be precisely the group that the North Carolina legislature intended to aid in enacting § 18B–1202(4). Yet, those

very individuals would fall outside of the protection of the Act if the courts required that a party be a permit holder in order to be considered as a wholesaler.

In sum, the district court properly concluded that Collins qualified as a wholesaler under the relevant portions of the Act despite not holding a wine wholesaler permit.

### III.

#### *Conclusion*

A previous panel of this Court in my view of things erred in denying prospective transferees of wine distribution agreements standing to sue for violations of N.C.Gen.Stat. § 18B–1206. This Court *en banc* should rehear the present case to correct that error. If the previous panel's ruling were not binding precedent here, Collins would have standing to sue under § 18B–1207(a).