DANNY LEE LOREN v. ALBERT JACKSON, JOHN DOE, HUBERT ORR, RICK ORR, HARRY CORN, MILFORD HUBBARD, AND HANK WHITMIRE

No. 8129SC876

(Filed 18 May 1982)

1. **Constitutional Law §§ 23, 40— civil rights action—failure to appoint counsel to prosecute**

In an action to recover damages under 42 U.S.C. § 1983 for the alleged deprivation of plaintiff's constitutional rights under color of state law during his pretrial detention, plaintiff was not entitled to the appointment of counsel under G.S. 7A-451(a) to prosecute his action, and the trial court did not abuse its discretion in refusing to appoint counsel pursuant to G.S. 1-110 to prosecute the action. Nor was plaintiff's right to due process violated by refusal of the trial court to appoint counsel or to recognize a fellow prisoner of the plaintiff to aid plaintiff in the prosecution of his case.

2. **Constitutional Law §§ 17, 18, 21; Public Officers § 9— pretrial detention—violation of constitutional rights under color of state law—insufficiency of complaint**

In an action to recover damages under 42 U.S.C. § 1983 for the alleged deprivation of plaintiff's constitutional rights under color of state law during plaintiff's pretrial detention, it was *held*: (1) plaintiff's allegations that the jailer defendants overheard his conversations with visiting family members, that his phone calls were monitored from an extension phone by the jailer defendants, and that the jailer defendants censored his incoming mail failed to state a claim for violation of his Fourth Amendment right to be free from unreasonable searches and seizures, since the alleged intrusions were plausible administrative responses to the jailers' reasonable perception of security needs; (2) plaintiff's allegations that he was allowed to visit with only his immediate family members, that such visits were permitted only once a week for no more than ten minutes, and that he was allowed only two telephone calls a week for a duration of no more than three minutes failed to state a claim for invasion of plaintiff's limited First Amendment right of freedom of association, since security interests and an interest in not overtaxing the resources of the detention facility and the capacity of the jailers to monitor and supervise reasonably justified the visitation and telephone privilege limitations; (3) plaintiff's allegations that, in the course of being arrested, he was threatened verbally and by a weapon wielded by a deputy sheriff failed to state a claim for violation of plaintiff's rights under the Due Process Clause of the U.S. Constitution; (4) plaintiff's allegations that during his detention, he was denied access to a bath towel, a face cloth, hot water for his instant coffee, and a bed sheet, that he had a dirty mattress, that he was served unappetizing and inedible and unsanitary food and was not allowed to have home-cooked food delivered to him, and that neither he nor his fellow detainees were ever examined by a doctor to determine whether any of them had a communicable disease were insufficient to state a claim based upon cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, since plaintiff's

allegations of unsanitary food failed to state a claim for impermissible punishment where there was no allegation that plaintiff was harmed from the ingestion of such food or by refraining from eating it, and the other discomforts alleged by plaintiff did not constitute punishment; and (5) plaintiff's allegations were insufficient to state a claim based on alleged violation of his Fifth Amendment right to be free from forced self-incrimination and his Sixth Amendment right to confront his accusers and to have effective assistance of counsel.

Judge BECTON concurring in the result.

APPEAL by plaintiff from *Grist, Judge.* Judgment entered 11 June 1981 in Superior Court, TRANSYLVANIA County. Heard in the Court of Appeals on 6 April 1982.

This appeal arises from plaintiff's action under 42 U.S.C. § 1983 to obtain redress for "the deprivation, under color of state law, of rights secured by the United States Constitution."

On 6 October 1980, plaintiff, proceeding in forma pauperis, filed a complaint containing the following factual allegations:

Defendants, at all times complained of, were acting under color of state law in their various capacities as Henderson County Sheriff, chairman of the Henderson County Board of Commissioners, jailers of the Henderson County jail, and Sheriff and Deputy Sheriff of Transylvania County. On 6 May 1980, defendant Deputy Hank Whitmire ordered plaintiff to pull his car to the side of the road and cursed plaintiff and, while wielding a large gun, threatened to blow plaintiff's head off if plaintiff did not get out of the car; these actions placed plaintiff "in immediate fear of his life." Plaintiff was then formally charged at the Transylvania County Sheriff's Department with assault with a deadly weapon inflicting bodily injury, and was transported by defendant Whitmire, who continued to harass, abuse, curse, and threaten plaintiff, to the Henderson County jail for pretrial detention. During plaintiff's incarceration at the Henderson County jail, plaintiff's "visits were limited to less than 10 minutes one day each week" and he could be visited only by his immediate family and his "visits were had in such a manner as to allow at least two" of the three jailer defendants (Hubert Orr, Rick Orr, Harry Corn) "to overhear each and every work [sic] spoken by Plaintiff and his visitors;" plaintiff was allowed to make only two telephone calls, of no more than two to three minutes' duration, a week, and all

his telephone conversations were monitored from an extension phone by either defendant Hubert Orr, Rick Orr, or Corn; "[p]laintiff was not provided with sheets and was forced to sleep on a dirty mattress," and "was not provided with a bath towel or face cloth nor was plaintiff allowed to furnish these items himself;" plaintiff was served unidentifiable, uneatable, unsanitary, and unappetizing food by the Henderson County jail, and "was not allowed to receive any home cooked foods;" "plaintiff was denied hot water" for his instant coffee; neither plaintiff nor the other pretrial detainees with whom he was confined were ever examined by a doctor for a communicable disease; "[p]laintiff's incoming mail was censored by" either defendant Hubert Orr, Rick Orr, or Harry Corn, and all three defendants verbally harassed plaintiff.

Plaintiff's complaint then alleged the following:

The facts related above disclose a concerted and systematic effort by defendants . . . to deprive plaintiff of constitutionally secured rights, including, but not limited to, those enumerated below:

A. Plaintiff's rights secured by the 8th and 14th Amendment to be free from cruel and unusual punishment.

B. Plaintiff's rights secured by the 1st Amendment to associate openly and freely with persons of his own choosing.

C. Plaintiff's rights secured by the 4th Amendment to be free from unreasonable search and seizure.

D. Plaintiff's rights secured to him [by] the 5th Amendment to be free from forced self incrimination.

E. Plaintiff's rights secured to him by the 6th Amendment to confront his accusers with other evidence and testimony and to have effective assistance of counsel.

Plaintiff concluded his complaint by praying for compensatory damages, punitive damages, and declaratory relief.

Each defendant moved for the dismissal of plaintiff's action on the grounds that the complaint failed to state a claim for which relief could be granted. Plaintiff moved that the court appoint an attorney to prosecute plaintiff's claim, or that it allow

him to be assisted at hearings and at trial by a fellow inmate. The court denied plaintiff's motion and granted defendants' motions, dismissing plaintiff's complaint with prejudice. Plaintiff appealed.

*Danny Lee Loren, pro se, for plaintiff appellant.*

*Van Winkle, Buck, Wall, Starnes & Davis, by Roy W. Davis, Jr. and Marla Tugwell, for defendant appellees Albert Jackson, John Doe, Hubert Orr, Rick Orr, and Harry Corn; Ramsey, White & Cilley, by William R. White, for defendant appellees Hank Whitmire and Milford Hubbard.*

HEDRICK, Judge.

[1] Plaintiff first assigns as error "[t]he Court's denial of plaintiff's Motion for Appointment of counsel, or, in the alternative, that the Court recognize a fellow prisoner of the plaintiff to aid plaintiff in the prosecution of plaintiff's cause of action."

"G.S. 7A-451(a) . . . constitutes the latest legislative determination of the scope of an indigent's entitlement to court appointed counsel." *Jolly v. Wright,* 300 N.C. 83, 86, 265 S.E. 2d 135, 139 (1980). The statute nowhere, however, lists, as being entitled to court-appointed counsel, a plaintiff bringing an action for damages and declaratory relief under 42 U.S.C. § 1983. Another statute, G.S. § 1-110, provides that the court "may assign to the person suing as a pauper learned counsel, who shall prosecute his action." "[T]he use of [the word] 'may' generally connotes permissive or discretionary action and does not mandate or compel a particular act." *Campbell v. First Baptist Church of City of Durham,* 298 N.C. 476, 483, 259 S.E. 2d 558, 563 (1979), and "a discretionary order of the trial court is conclusive on appeal absent a showing of abuse of discretion." *Privette v. Privette,* 30 N.C. App. 41, 44, 226 S.E. 2d 188, 190 (1976). Since plaintiff has shown no abuse, by the court, of its statutory discretionary power to appoint counsel for pauper plaintiffs, no violation of G.S. § 1-110 has been shown.

Turning to constitutional considerations, "[t]he mandate of procedural due process contained in our Constitution and in the Fourteenth Amendment applies only to actions by the government which deprive individuals of their fundamental rights." *North Carolina National Bank v. Burnette,* 297 N.C. 524, 534, 256

S.E. 2d 388, 394 (1979). Even when some procedural due process must be afforded, the determination of whether due process requires the appointment of counsel may be made only after balancing the factors in favor of appointment "against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." *Lassiter v. Department of Social Services of Durham County*, 452 U.S. 18, 26-27, 68 L.Ed. 2d 640, 649, 101 S.Ct. 2153, 2159 (1981). No procedural due process, and particularly no right to appointed counsel, inures to plaintiff in the present case where his action is a civil action initiated by him against private individuals, and where his action is one in which the State is not even a party, much less the initiator of proceedings to deprive an individual of his physical liberty. Finally, we are aware of no rule requiring a trial judge to order a furlough for an incarcerated inmate whereby that inmate may assist, in a nontestimonial capacity, a party to a legal dispute. Plaintiff's first assignment of error is therefore overruled.

[2]   Plaintiff's next assignment of error is "[t]he Court's dismissal of plaintiff's complaint upon defendant's [sic] Motion to Dismiss for failure of the complaint to state a cause of action upon which relief could be granted."

"[A] complaint must be dismissed when, on its face, it reveals that no law supports it, that an essential fact is missing, or a fact is disclosed which necessarily defeats it." *Mumford v. Hutton & Bourbonnais Co.*, 47 N.C. App. 440, 442, 267 S.E. 2d 511, 512 (1980). Since plaintiff's action purports to be a 42 U.S.C. § 1983 action against defendants for their deprivation under color of state law, of his constitutional rights, the factual allegations in his complaint must be examined to determine whether, if believed, they amount to any violation of recognized constitutional rights. *See Evans v. Town of Watertown*, 417 F. Supp. 908 (D. Mass. 1976). Hence, the crucial inquiry in the present case is the scope of "the constitutional rights of pretrial detainees—those persons who have been charged with a crime but who have not yet been tried on the charge." *Bell v. Wolfish*, 441 U.S. 520, 523, 60 L.Ed. 2d 447, 458, 99 S.Ct. 1861, 1865 (1979).

The Government may permissibly detain a person suspected of committing a crime, even though such detention is prior to a

formal adjudication of guilt; "the Government has a substantial interest in ensuring that persons accused of crimes are available for trials and, ultimately, for service of their sentences, . . . [and] confinement of such persons pending trial is a legitimate means of furthering that interest." *Id.* at 534, 60 L.Ed. 2d at 465, 99 S.Ct. at 1871. Although pretrial detainees do not forfeit all constitutional protections by reason of their confinement, *Id.*, "maintaining institutional security and preserving internal order and discipline are essential goals [of the detention system] that may require limitation or retraction of the retained constitutional rights of . . . pretrial detainees." *Id.* at 546, 60 L.Ed. 2d at 473, 99 S.Ct. at 1878. "A detainee simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* at 546, 60 L.Ed. 2d at 473, 99 S.Ct. at 1878.

> Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry. Accordingly, . . . even when an institutional restriction infringes a specific constitutional guarantee, . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.

*Id.* at 547, 60 L.Ed. 2d at 473, 99 S.Ct. at 1878. Furthermore, the judiciary should accord prison administrators wide-ranging deference in the adoption and execution of policies and practices that they judge necessary to achieve institutional objectives. *Id.*

With respect to plaintiff's allegation that his Fourth Amendment right to be free from unreasonable searches and seizures was violated, the pertinent factual allegations are those which bear on invasions of plaintiff's reasonable expectation of privacy, i.e. his allegations that the jailer defendants overheard his conversations with visiting family members, that his phone calls were monitored from an extension phone by the jailer defendants, and that the jailer defendants censored his incoming mail.

> The test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is

conducted. . . . A detention facility is a unique place fraught
with serious security dangers.

*Id.* at 559, 60 L.Ed. 2d at 481, 99 S.Ct. at 1884. Although plaintiff
has alleged a violation of his privacy interest by the jailers, the
intrusions were within that zone to which the constitution accords
broad    deference,    since    the    intrusions    were    plausible    ad-
ministrative responses to the prison officials' reasonable percep-
tion of security needs. The jailer defendants could quite easily
deem it prudent to monitor the conversations and mail for any
mention of escape plans or other threat to security or internal
order and, with respect to the mail, for contraband. Just as *Bell
v. Wolfish, supra,* held that an invasion of privacy as intrusive as
a visual body cavity search could constitutionally be made of
pretrial detainees on less than probable cause, so too may the in-
trusions alleged here be made given the prison administrators' in-
terest in preserving institutional security. Hence, the allegations
bearing on any Fourth Amendment claim were properly dis-
missed.

The allegations which arguably bring into play the First
Amendment right to freedom of association are plaintiff's allega-
tions that he was allowed to visit with only his immediate family
members, and then only once a week for no more than ten
minutes, and that he was allowed only two telephone calls a week,
and then for a duration of no more than three minutes. Evaluated,
following *Bell v. Wolfish, supra,* in light of the prison administra-
tion's objective of maintaining institutional security, these alleged
limitations on plaintiff's access to communication with persons in
the outside world do not constitute a deprivation of rights
secured by the First Amendment. The First Amendment con-
templates the extension of latitude to the prison officials' likely
determination that unlimited personal contact by detainees with
non-inmates would afford too much opportunity for the introduc-
tion of contraband or weapons into the detention facility, and
hence, too much potential for escape or internal disorder. Security
interests and an interest in not overtaxing the resources of the
detention facility and its capacity to monitor and supervise also
offer    a    reasonable    justification    for    the    limitations    on    the
detainee's use of the telephone. Furthermore, it is significant that
plaintiff was not denied all visitation and telephone privileges.
These alleged restrictions are sufficiently counterbalanced by in-

stitutional objectives to fail as a matter of law to state a claim for invasion of the detainee's limited right of freedom of association, and were properly dismissed.

Plaintiff also alleges that, in the course of his being arrested, he was threatened, verbally and by a weapon wielded by defendant Deputy Whitmire, and that he thereby was put in immediate fear for his life. This allegation does not rise to constitutional dimensions. The substantive guarantees of the Due Process Clause are not violated by the mere fact that the State may, in inflicting an injury upon the plaintiff, be characterized as a tortfeasor. *Paul v. Davis*, 424 U.S. 693, 47 L.Ed. 2d 405, 96 S.Ct. 1155 (1976). Hence, the allegation was insufficient to state a claim under 42 U.S.C. § 1983; similarly, the allegation fails to state a claim even under state tort law since the alleged use of threats by the arresting Deputy Whitmire was within the bounds of permissible privilege accorded an officer making an arrest of a person reasonably believed to have committed a criminal offense. Furthermore, plaintiff's allegations of the verbal abuse he received from the defendant jailers after his arrest also failed to state a claim for deprivation of a constitutional right, as required under 42 U.S.C. § 1983, or for a tort. These allegations were properly dismissed.

The allegations of plaintiff which arguably implicate his constitutional right as an unconvicted pretrial detainee to be free from punishment are the following: during his detention, plaintiff was denied access to a bath towel, a face cloth, hot water for his instant coffee, and a bed sheet; he had a dirty mattress; he was served unappetizing and uneatable and unsanitary food and was not allowed to have home-cooked food delivered to him; and neither he nor his fellow detainees were ever examined by a doctor to determine whether any of them had a communicable disease.

Prior to a formal adjudication of guilt, the State does not acquire the power to punish with which the Eighth Amendment Cruel and Unusual Clause is concerned; "[w]here the State seeks to impose such punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." *Bell v. Wolfish, supra* at 535, 60 L.Ed. 2d at 466, 99 S.Ct. at 1872, n. 16. "Due process requires that a

pretrial detainee not be punished." *Id.* at 535, 60 L.Ed. 2d at 466, 99 S.Ct. at 1872, n. 16.

> [I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.
>
> . . .
>
> Restraints [however] that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial. . . . [I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention. . . .

*Id.* at 539-40, 60 L.Ed. 2d at 468-69, 99 S.Ct. at 1874-75.

Plaintiff's allegations of nonaccess to a bath towel, a face cloth, hot water for his instant coffee, a bed sheet, and a clean mattress merely detail the discomfort to which he was subjected during detention; these minor privations do not amount to punishment. Similarly, his allegation that he and his fellow detainees were never examined for a communicable disease, absent an allegation that he thereby suffered in any sense, can in no way be said to constitute punishment. Plaintiff's most weighty allegation is that he was served unsanitary food and was not allowed to receive, in its stead, home-cooked food. Concern about the threat of smuggling can justify defendants' prohibition of deliveries of home-cooked food, especially when adequately sanitary prison food is provided. Furthermore, plaintiff's allegations fail to state a claim for impermissible punishment even when the prison food is unsanitary where, as here, there is no allegation that plaintiff in any way suffered or was harmed from the ingestion of such food or by refraining from eating it. The discomforts alleged by plaintiff may be explained as a function of the detention facility's limited resources and the defendants' legitimate interest in the

Loren v. Jackson

effective allocation of those resources. These allegations, therefore, were properly dismissed.

Finally, plaintiff has alleged that defendants violated his Fifth Amendment right to be free from forced self-incrimination and his Sixth Amendment right to confront his accusers and to have effective assistance of counsel. These allegations are supported by no factual allegations of even remote relevance to plaintiff's legal claims. "While a *pro se* complaint is held to less stringent standards than one drafted by an attorney, . . . 'courts need not conjure up unpleaded facts to support . . . conclusory [allegations].'" *Hurney v. Carver*, 602 F. 2d 993, 995 (1st Cir. 1979). These allegations were properly dismissed.

Since none of plaintiff's allegations were legally sufficient to state a claim for a deprivation of a constitutional right, or to state any other cognizable claim, the trial court properly dismissed the complaint.

Affirmed.

Judge HILL concurs.

Judge BECTON concurring in the result.

Judge BECTON, concurring in the result.

Plaintiff's complaint "served up a veritable potpourri of [claims] that implicated virtually ever facet of the [Henderson County Jail's] conditions and practices." *Bell v. Wolfish*, 441 U.S. 520, 526-27, 60 L.Ed. 2d 447, 461, 99 S.Ct. 1861, 1868 (1979). Believing, however, that the breadth and sweep of plaintiff's complaint does not require an equally broad and sweeping opinion, I write this concurring opinion.

The resolution of plaintiff's appeal is made simple by emphasizing the following three facts: (1) plaintiff's complaint was filed on 6 October 1980; (2) plaintiff was confined in the Henderson County Jail from 6 May 1980 until 30 June 1980 as a pre-trial detainee; and (3) plaintiff's action is an individual action, not a class action, brought to secure declaratory relief and compensatory and punitive damages. Because this action is an individual

action, rather than a class action, all claims seeking declaratory relief are moot since defendant is no longer housed in the Henderson County Jail. *See Inmates v. Owens*, 561 F. 2d 560, 562 (4th Cir. 1977). Even treating plaintiff's *pro se* complaint less stringently than a complaint drafted by an attorney, plaintiff has not shown that he was injured or entitled to relief as a result of the acts of defendants. Consequently, he has failed to state a claim for relief regarding compensatory and punitive damages.

As indicated, I concur in the result reached by the majority, but I believe the majority has painted with too broad a brush. Specifically, with regard to plaintiff's allegations that the jailer overheard his telephone conversations by monitoring them on an extension telephone and that the jailer censored plaintiff's incoming mail, the majority states: "The intrusions were within that zone to which the constitution accords broad deference, since the intrustions were plausible administrative responses to the prison officials' reasonable perception of security needs." Ante, p. 7. First, *Procunier v. Martinez*, 416 U.S. 396, 40 L.Ed. 2d 224, 94 S.Ct. 1800 (1974) will not allow censorship of all mail; mail censorship is permitted only in furtherance of security, order or rehabilitation. Second, there is no evidence, on this Rule 12(b)(6) motion, suggesting that defendants needed to monitor plaintiff's telephone calls based on a perceived "security need."

With regard to plaintiff's allegations that in the course of — and after — his arrest, he was threatened, verbally and by use of a weapon by defendant Whitmire, the majority states: "The allegation fails to state a claim . . . since the alleged use of threats by the arresting defendant deputy Whitmire was within the bounds of permissible privilege accorded an officer making an arrest of a person reasonably believed to have committed a criminal offense." Ante, p. 9. First, the majority's statement, by its breadth, condones too much. According to plaintiff, defendant Whitmire yelled in a loud voice: "Danny, you God-damned son-of-a-bitch come out of the car or I'll blow your Mother-Fucking head off." Taking plaintiff's allegations as true, as we are required to do on a Rule 12(b)(6) motion, we should not lend our imprimatur to this sort of conduct by an officer. Second, the majority's statement, by implication, does not cover defendant's further allegation that while being transported to the jail *after arrest* "the defendant Whitmire continually verbally. harassed and abused

Plaintiff by cursing Plaintiff and threatening to shoot Plaintiff and throw him in the French Broad River. . . .” It is because plaintiff fails sufficiently to allege an injury that I concur in the majority's disposition of this claim. To the extent the majority's statement condones defendant Whitmire's conduct, I divorce myself from it. The law does not tolerate all verbal abuse of pre-trial detainees by jailers, guards or other prison officials. For example, if a threat is intended to intimidate a pre-trial detainee or an inmate from exercising a right, such as the right of access to court, a claim for relief has been stated. *See Hudspeth v. Figgins,* 584 F. 2d 1345 (4th Cir. 1978), *cert. denied* 441 U.S. 913, 60 L.Ed. 2d 386, 99 S.Ct. 2013 (1979).

For the foregoing reasons, I concur in the result.