INMAN, Judge.
*2 This case requires us to interpret statutes allowing land developers to recover damages, including interest, for impact fees illegally exacted by cities and towns as a condition of development and construction. Defendant appeals from an order entered 30 June 2014 denying its motion to dismiss plaintiffs' claim, granting plaintiffs' motion for judgment on the pleadings, and awarding plaintiffs $18,221.58 in unpaid interest. After careful consideration, we affirm.
*568 I. Facts and Legal Background
Because the actions taken by the parties in this case are governed by prior appellate decisions and statutes, we summarize the factual background within the chronology of legal developments.
*3 In June 2006, this Court issued Durham Land Owners Ass'n v. Cnty. of Durham, 177 N.C.App. 629, 630 S.E.2d 200, writ denied, review denied, 360 N.C. 532, 633 S.E.2d 678 (2006), holding that a school impact fee imposed by Durham County as a prerequisite to development approval was not specifically authorized by the General Assembly, and was therefore illegal. While the Court ruled that a refund of the fees was an appropriate remedy, it declined to order the County to pay interest on those fees, noting that interest "may not be awarded against the State unless the State has manifested its willingness to pay interest by an Act of the General Assembly or by a lawful contract to do so." Id. at 640, 630 S.E.2d at 207 (quotation marks omitted).
In 2007, one year after this Court issued its ruling in Durham Land Owners Ass'n, the General Assembly passed Senate Bill 1152, "an act to require counties and cities to pay interest on illegally exacted taxes, fees, or monetary contributions for development that are not specifically authorized by law." See 2007 N.C. Sess. Laws ch. 371. That act amended N.C. Gen.Stat. § 153A-324 and N.C. Gen. Stat. § 160A-363 to include the following: "If the [county/city] is found to have illegally exacted a tax, fee, or monetary contribution for development or a development permit not specifically authorized by law, the [county/city] shall return the tax, fee, or monetary contribution plus interest of six percent (6%) per annum."
Town of China Grove ("defendant") is an unincorporated municipality located in Rowan County. Defendant enacted an Adequate Public Facilities Ordinance ("APFO") requiring land developers to pay impact fees as a condition of obtaining necessary permits for development.[1] In relevant part, the purpose and intent of the APFO is the following:
A. To ensure that public facilities needed to support new residential development meet or exceed the level of service standards established herein.
...
C. To ensure that no application is approved which would cause a reduction in the levels of service for any public facilities below the adopted level of service established in this ordinance.
*4 D. To ensure that adequate public facilities needed to support new residential development are available concurrent with the impacts of such development[.]
The general purpose of the fee was "to ensure funding existed to accommodate the potentially increased public needs of the newly built neighborhood."
On 6 February 2008, China Grove 152, LLC and David R. Investments, LLC ("plaintiffs") paid a fee of $54,284 required by defendant pursuant to the APFO in order to begin development of the Miller's Grant Subdivision in China Grove.
On 24 August 2012, during the development of the subdivision, the North Carolina Supreme Court issued Lanvale Properties, LLC v. Cnty. of Cabarrus, 366 N.C. 142, 731 S.E.2d 800 (2012). In Lanvale, the Court struck down Cabarrus County's APFO (which the Court noted was "a very effective means of generating revenue") because it was not specifically authorized by statute. Id. at 161, 731 S.E.2d at 814-15. The Court held that "absent specific authority from the General Assembly, APFOs that effectively require developers to pay an adequate public facilities fee to obtain development approval are invalid as a matter of law." Id.
On 21 August 2013, plaintiffs sent a letter to defendant requesting reimbursement of the APFO fee with interest in light of our Supreme Court's decision in Lanvale. Defendant responded on 5 September 2013 with a letter enclosing a check payable to plaintiffs for $54,284. The letter stated that the sum "represents a return of your payment pursuant to the [APFO] for the expected public facilities impact of the [subdivision]."
*569 Defendant's letter further stated that "[w]e will consider our offer and your acceptance of our check in the amount of $54,284.00, as a complete mutual release of all obligations and liabilities under [the APFO][.]"
In April 2014, plaintiffs filed a complaint for declaratory judgment to secure interest owed on the principal APFO sum of $54,284. On 22 May 2014, plaintiffs filed a motion for judgment on the pleadings, and defendant subsequently filed a corresponding motion to dismiss plaintiffs' claim. The trial court denied defendant's motion and granted plaintiffs' motion, ruling that the payment made pursuant to the APFO was an illegally exacted fee not specifically authorized by North Carolina law. Pursuant to N.C. Gen.Stat. § 160A-363(e), the trial court ordered that defendant pay 6% per annum interest on the principal sum from the date plaintiffs paid the APFO fee (8 February 2008) to the date defendant *5 returned the principal sum to plaintiffs (11 September 2013) for a total of $18,221.58[2] .
II. Analysis
a.) Legality of the Fee
Defendant first argues that the APFO is a valid ordinance pursuant to N.C. Gen.Stat. § 160A-372 (2013), and that consequently the trial court erred in entering judgment in favor of plaintiffs. We disagree.
A judgment on the pleadings "is a method by which the trial court may dispose of a claim when it is evident from the face of the pleadings that the claim lacks merit." DeMent v. Nationwide Mut. Ins. Co., 142 N.C.App. 598, 600, 544 S.E.2d 797, 799 (2001). The reviewing court must scrutinize all facts and permissible inferences in the light most favorable to the nonmoving party. Id. A trial court should grant a motion for judgment on the pleadings only when "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Tradewinds Campground, Inc. v. Town of Atl. Beach, 90 N.C.App. 601, 602, 369 S.E.2d 365, 365 (1988) (citation and quotation marks omitted).
N.C. Gen.Stat. § 160A-363(e) provides that "[i]f [a] city is found to have illegally exacted a tax, fee, or monetary contribution for development or a development permit not specifically authorized by law, the city shall return the tax, fee, or monetary contribution plus interest of six percent (6%) per annum." (Emphasis added.) Presumably based on the General Assembly's use of the word "found" in section 160A-363(e), the trial court, in its findings of fact, determined that the APFO "is an illegally exacted tax, fee, or monetary contribution for development or a development permit and that said tax, fee, or monetary contribution is not specifically authorized by North Carolina law[.]"
However, "[t]he labels 'findings of fact' and 'conclusions of law' employed by the trial court in a written order do not determine the nature of our review." Westmoreland v. High Point Healthcare, Inc., 218 N.C.App. 76, 79, 721 S.E.2d 712, 716 (2012). Nor does the use of the word "found" or "finding" in a statute control whether the trial court's determination is actually a finding of fact or a conclusion of law. See, e.g., McMillan v. Ryan Jackson Properties, LLC, --- N.C.App. ----, ----, 753 S.E.2d 373, 376 (2014) (holding that the decision to award attorneys'
*6 fees for an action brought "without reasonable cause" was a conclusion of law because it involved the application of legal principles, despite the statute authorizing fees based on a "finding" by the trial court that the action was brought "without reasonable cause").
The classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult. As a general rule, however, any determination requiring the exercise of judgment, or the application of legal principles, is more properly classified as a conclusion of law. Any determination reached through logical reasoning from the evidentiary facts is more properly classified a finding of fact.
In re Helms, 127 N.C.App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations and quotation marks omitted).
*570 The nature of the inquiry described in section 160A-363(e) is purely an issue of whether a municipal ordinance complies with North Carolina law. The parties agree that the determination of whether the APFO is illegal turns on the holding of Lanvale, 366 N.C. at 142, 731 S.E.2d at 800, and the application of various statutes setting out the powers of counties, cities, and towns. These are sources of law, not evidentiary facts. Indeed, the dispositive determination under section 160A-363(e) turns on whether the APFO is "illegal." Because any determination of legality inherently involves the "application of legal principles," In re Helms, 127 N.C.App. at 510, 491 S.E.2d at 675, the trial court's determinations that the APFO is "illegal" and "not specifically authorized by North Carolina law" are conclusions of law, not findings of fact. As such, we review these conclusions de novo. See Westmoreland, 218 N.C.App. at 79, 721 S.E.2d at 716 ("If the trial court labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' de novo. ").
As to the legality of the APFO, defendant argues that "[n]othing on the face of the ordinance makes Plaintiff's fee illegal," because the nature of the China Grove APFO is distinguishable from the APFO in Lanvale. We disagree.
The Lanvale Court held that "absent specific authority from the General Assembly, APFOs that effectively require developers to pay an adequate public facilities fee to obtain development approval are invalid as a matter of law." Lanvale, 366 N.C. at 163, 731 S.E.2d at 815 (emphasis added).
Here, the China Grove APFO states that its purpose is to "ensure that public facilities needed to support new residential development meet *7 or exceed the level of service standards established herein." Plaintiffs alleged in their complaint, and defendant admitted in its answer, that defendant required plaintiffs to pay an APFO fee of $54,284 "to ensure funding existed to accommodate the potentially increased public needs of the newly built neighborhood." Therefore, because it is undisputed that this was an "adequate public facilities fee" required for plaintiffs to gain development approval, the dispositive question is whether the General Assembly provided specific authority for that fee. See id.
Defendant contends that the APFO is actually a subdivision control ordinance as provided for in N.C. Gen.Stat. § 160A-372, and under the language of that statute, defendant argues that the General Assembly specifically authorized the adequate public facilities fee. Even assuming, however, that the APFO is a subdivision control ordinance within the scope of section 160A-372, the ordinance's provision for a public facilities fee has not been specifically authorized by the General Assembly. Nothing in section 160A-372 authorizes a city or town, specifically or generally, to enact an adequate public facilities fee as a condition precedent for development approval. Section 160A-372(c) provides that a subdivision control ordinance "may provide that a developer may provide funds to the city whereby the city may acquire recreational land" for parks, (emphasis added); that language is clearly permissive and does not authorize municipalities to charge fees as a condition precedent to subdivision approval, as the APFO did here. See Loren v. Jackson, 57 N.C.App. 216, 219, 291 S.E.2d 310, 312 (1982) (noting that the use of the word "may" in a statute "generally connotes permissive or discretionary action and does not mandate or compel a particular act" (quotation marks omitted)). Contrary to defendant's argument, there are no provisions in section 160A-372 authorizing China Grove to make its development approval contingent on securing funds to subsidize its law enforcement, fire protection, and parks, which was the stated purpose of the APFO.
It is also immaterial that the APFO in Lanvale sought to subsidize schools, as distinguished from the APFO here, which sought to subsidize the town's police force, fire departments, and parks. The Lanvale Court did not limit its holding to adequate public schooling fees but rather "adequate public facilities fee[s]." Lanvale, 366 N.C. at 163, 731 S.E.2d at 815 (emphasis added).
Following Lanvale, we conclude that China Grove's APFO was invalid as a matter of law. Id. Therefore, because China Grove "illegally exacted a tax, fee, or monetary contribution *571 for development or a development permit not specifically authorized by law," we affirm the *8 trial court's legal conclusion that defendant must "return the tax, fee, or monetary contribution plus interest of six percent (6%) per annum," as required by the plain language of section 160A-363(e).
b.) Defendant's Motion to Dismiss
Next, defendant argues the trial court erred by denying its motion to dismiss plaintiffs' complaint because it failed to state a claim upon which relief can be granted. Specifically, defendant contends that a claimant is not entitled to recover interest pursuant to N.C. Gen.Stat. § 160A-363(e) when the municipality has already voluntarily refunded the illegally extracted fee. We disagree.
"In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the allegations of the complaint must be viewed as admitted, and the motion should not be allowed unless the complaint affirmatively shows that plaintiff has no cause of action." Gatlin v. Bray, 81 N.C.App. 639, 640, 344 S.E.2d 814, 815 (1986). "This Court must conduct a de novo review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." Leary v. N.C. Forest Prods., Inc., 157 N.C.App. 396, 400, 580 S.E.2d 1, 4, aff'd per curiam, 357 N.C. 567, 597 S.E.2d 673 (2003).
The longstanding rule in North Carolina was that interest "may not be awarded against the State unless the State has manifested its willingness to pay interest by an Act of the General Assembly or by a lawful contract to do so." Durham Land Owners Ass'n, 177 N.C.App. at 640, 630 S.E.2d at 207 ; see also Shavitz v. City of High Point, 177 N.C.App. 465, 485, 630 S.E.2d 4, 18 (2006) (explaining that "because counties and cities are political subdivisions of the State, it follows that [interest cannot be imposed] against a county or city acting in its sovereign capacity"). Therefore, in Durham Land Owners Ass'n, "[d]espite the [c]ounty's unauthorized actions[,]" this Court did not award interest as requested by plaintiffs because there was "no statutory authority for the award of interest[.]" Durham Land Owners Ass'n, 177 N.C.App. at 640, 630 S.E.2d at 207.
Following this Court's decision in Durham Land Owners Ass'n, the General Assembly enacted N.C. Gen.Stat. § 160A-363(e) and N.C. Gen.Stat. § 153A-324 allowing for developers to seek interest on fees illegally exacted by cities and counties. N.C. Gen.Stat. § 160A-363(e), as previously discussed, states: "If the city is found to have illegally exacted a tax, fee, or monetary contribution for development or a development permit not specifically authorized by law, the city shall return the tax, *9 fee, or monetary contribution plus interest of six percent (6%) per annum." N.C. Gen.Stat. § 160A-363(e).
Defendant argues that there is no underlying fund from which to recover interest because the principal has already been refunded to plaintiffs. Defendant posits that because the fee was voluntarily returned and was not the subject of an underlying judgment entered against defendant, plaintiffs are barred from bringing their claim for interest. However, N.C. Gen.Stat. § 160A-363(e) is unambiguous: "If the city is found to have illegally exacted a ... fee, ... not specifically authorized by law," the fee principal shall be returned with interest. Id. The statute's plain language neither prevents a claim for interest when the city returns the principal amount to a claimant nor bars a claim for interest that arises from a separate civil action. Thus, plaintiffs brought an actionable claim to recover interest pursuant to N.C. Gen.Stat. § 160A-363(e). See Lanvale, 366 N.C. at 154, 731 S.E.2d at 809-10 ("When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning.").
c.) Doctrine of Accord and Satisfaction
Finally, defendant argues the trial court erred by denying its motion to dismiss because plaintiffs' claim is barred by the common law doctrine of accord and satisfaction. Specifically, defendant asserts that the *572 plaintiffs' acceptance of $54,284, coupled with the initialing of defendant's letter, established an accord and satisfaction and released defendant from any requirement to pay outstanding interest. We disagree.
The doctrine of accord and satisfaction "is recognized as a method of discharging a contract, or settling a cause of action arising either from a contract or a tort, by substituting for such contract or cause of action an agreement for the satisfaction thereof, and an execution of such substitute agreement." Prentzas v. Prentzas, 260 N.C. 101, 103, 131 S.E.2d 678, 680 (1963) (citations and quotation marks omitted).
A valid contract requires an offer, an acceptance, and sufficient consideration. Barbee v. Johnson, 190 N.C.App. 349, 355, 665 S.E.2d 92, 97 (2008). Generally, "the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." Lynn v. Lynn, 202 N.C.App. 423, 431, 689 S.E.2d 198, 205 (2010) (citation and quotation marks omitted). "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court, ... and the court cannot look beyond the terms of the contract to determine the intentions *10 of the parties." Piedmont Bank and Trust Co. v. Stevenson, 79 N.C.App. 236, 240, 339 S.E.2d 49, 52, aff'd per curiam, 317 N.C. 330, 344 S.E.2d 788 (1986) (citations and quotation marks omitted).
The facts sub judice demonstrate that a contract existed. Defendant's letter to plaintiffs constituted an offer, and plaintiffs' initialing of the letter and cashing of the check was an acceptance with consideration. The contract terms, indicated in the body of the letter, referenced a "mutual release ... of all obligations and liabilities under the [APFO]." Thus, the terms of the contract clearly denote a waiver of all obligations arising out of the APFO to which both parties agreed. However, the letter contains no reference to a waiver of any obligations or liabilities that might arise vis-à-vis defendant regarding interest payments allowed under N.C. Gen.Stat. § 160A-363(e). See Lynn, 202 N.C.App. at 431, 689 S.E.2d at 205.
A release of the obligations contained under the APFO, as indicated by the plain terms of the contract, did not amount to a release of the statutory obligation to pay interest under N.C. Gen.Stat. § 160A-363(e). As such, defendant's argument that plaintiffs are barred from seeking interest payments under the accord and satisfaction doctrine is without merit.
III. Conclusion
In sum, we affirm the trial court's order granting plaintiffs' motion for judgment on the pleadings and denying defendant's motion to dismiss because the trial court properly concluded that the $54,284 fee was illegal, plaintiffs' cause of action to recover interest pursuant to N.C. Gen.Stat. § 160A-363(e) properly states a claim upon which relief can be granted, and plaintiffs' claim is not barred by the doctrine of accord and satisfaction.
AFFIRMED.
Judges ELMORE and GEER concur.

Although the content of the APFO was before the trial court, the record contains no information about the date or manner in which it was enacted.

Because defendant does not challenge the amount of interest awarded to plaintiffs, we do not address the trial court's calculation of this sum. See N.C. R.App. P. 28.