L. RICHARDSON MEMORIAL HOSPITAL, INC. v. LOUIS C. ALLEN, II, ADMIN-
ISTRATOR OF THE ESTATE OF MYRTLE GUY, DECEASED, AND MARY LOU SUM-
MERS GUY v. DALE ANDERSON TOWNSEND

No. 8418DC399

(Filed 5 February 1985)

1. Cancellation and Rescission of Instruments § 10.2— deeds—incompetency of
grantor—sufficiency of evidence

In plaintiff's action to void the transfer of real property on the ground
that the grantor was incompetent, the trial court properly denied defendant's
motion to dismiss where the testimony of two intensive care nurses as to the
grantor's behavior—her calling out and screaming, her confusion, her belief
that she was somewhere else, the incoherency of her speech, her inability to
feed herself, her frequent attempts to climb out of bed, necessitating
restraint—coupled with the extreme illegibility of her signature on the deeds,
the attending doctor's testimony that she was confused and disoriented, and
the testimony of the notary that defendant had to lift the grantor's hand and
put it on the line where she could sign was sufficient to support the plaintiff's
contention that the grantor was not capable of comprehending the nature of
and scope and effect of scrawling a mark or "signature" on the deeds.

2. Cancellation and Rescission of Instruments § 9.1— incompetency of grantor—
testimony of nurses admissible

The trial court did not err in allowing two intensive care nurses to
describe in general terms the events on the day the grantor allegedly "signed"
three deeds and to give their opinions as to the grantor's mental capacity to
execute the deeds, and the fact that the nurses watched the grantor through a
video monitor did not affect their qualification to give an opinion, since the
nurses could see the entire intensive care unit from their desk and could hear
conversation within the unit; the nurses were responsible for watching and
caring for the grantor for eight hours on the day in question and for making
notes on her condition; this gave them reasonable or sufficient opportunity to
observe her and to form an opinion as to her mental condition; and the nurses'
testimony as to grantor's behavior during their observation of her, within
several hours of her signing the deeds, was not too remote.

3. Cancellation and Rescission of Instruments § 9.1— incompetency of grantor—
doctor's testimony admissible

In plaintiff's action to void the transfer of property on the ground that the
grantor was mentally incompetent, the trial court did not err in admitting
testimony of the attending physician who saw the grantor when she was first
admitted to the hospital where the witness refused to give an opinion as to
whether the grantor was capable of understanding the nature and conse-
quences of her actions in signing the deeds but instead would only repeat his
diagnosis of the grantor's condition.

APPEAL by defendant from *Daisy, Judge.* Judgment entered 18 November 1983 in District Court, GUILFORD County. Heard in the Court of Appeals 4 December 1984.

On 23 September 1981, Myrtle Guy, now deceased, was admitted to L. Richardson Memorial Hospital in Greensboro, suffering from an injured hip, uncontrolled diabetes, hypertension and organic brain syndrome. She was seventy years of age. On 24 September 1981, Ms. Guy was transferred from a regular ward in the hospital to the intensive care unit. She remained there until 26 September 1981, when she was returned to a regular hospital ward. She left the hospital on 24 October 1981 and died intestate on 2 February 1982.

On 25 September 1981, defendant Dale Townsend went to the hospital intensive care unit and caused Myrtle Guy to sign or make her mark on three deeds which defendant had prepared. All three deeds were "gift deeds" conveying real property belonging to Myrtle Guy to defendant. The defendant is Myrtle Guy's niece.

On 3 March 1982, the plaintiff L. Richardson Memorial Hospital, Inc., brought suit against defendant to void the transfer of real property from Myrtle Guy to defendant on 25 September 1981, on grounds that Myrtle Guy was incompetent, and that the conveyance was accomplished by undue influence, or in the alternative, that if Myrtle Guy was mentally competent, the conveyance was fraudulent. Louis C. Allen, III, the administrator of Myrtle Guy's estate, was allowed to intervene as a real party in interest by order filed 22 August 1983. Mary Lou Summers Guy, Ms. Guy's daughter, was allowed to intervene and be joined as a party plaintiff by a consent order filed 25 August 1983.

The trial court dismissed with prejudice the plaintiffs' and intervenors' claims of undue influence and conveyance to defraud creditors. It found, however, that Myrtle Guy did not possess sufficient mental capacity to execute the three deeds conveying her real property to defendant. It decreed that the three deeds were null and void, and cancelled of record.

The defendant appeals the judgment.

*Mary K. Nicholson for defendant appellant.*

*Donald K. Speckhard for plaintiff appellee Mary Lou Summers Guy.*

*William C. Ingram for plaintiff appellee L. Richardson Memorial Hospital, Inc.*

*Louis C. Allen, III, for plaintiff appellee Administrator of the Estate of Myrtle Guy, Deceased.*

ARNOLD, Judge.

Defendant first contends that the trial court erred in failing to allow her motion to dismiss as to parties in interest. Early in the litigation, on 1 April 1982, defendant moved to dismiss for failure to state a claim on the grounds that plaintiff Hospital did not have standing to sue on behalf of Myrtle Guy's estate or heirs. On 26 August 1982, the trial court issued an order allowing the parties to attempt settlement and holding open the matter until the parties completed settlement negotiations. This continued defendant's motion to dismiss. On 22 August 1983 the administrator of Myrtle Guy's estate was joined as a real party in interest, and on 25 August 1983 Mary Lou Summers Guy, daughter and sole heir of Myrtle Guy, was joined as a party plaintiff by a consent order.

The joinder of the administrator as real party in interest occurred within a reasonable time, given that the parties were engaged in settlement negotiations after the defendant made her motion. Under North Carolina Rule of Civil Procedure 17(a), the commencement of the action was properly ratified, and it cannot be dismissed on the ground that it is not prosecuted in the name of the real party in interest.

[1] Defendant contends next that the trial court erred in denying her motion to dismiss at the end of plaintiffs' evidence and at the close of all the evidence on the issue of Myrtle Guy's mental capacity to make the three deeds. In considering a motion for dismissal at the close of the evidence in a non-jury trial, the trial court must determine whether the evidence is sufficient to show plaintiff's right to relief. *Jones v. Nationwide Mutual Insurance Co.*, 42 N.C. App. 43, 255 S.E. 2d 617 (1979).

The record indicates that the evidence was clearly sufficient to establish a right to relief. The testimony of the two intensive care nurses as to Myrtle Guy's behavior—her calling out and screaming, her confusion, her belief that she was somewhere else,

the incoherency of her speech, her inability to feed herself, her frequent attempts to climb out of bed, necessitating restraint — coupled with the extreme illegibility of her signature on the deeds, the attending doctor's testimony that she was confused and disoriented, and the testimony of the notary that the defendant had to lift Ms. Guy's hand and put it on the line where she could sign, are sufficient to support the plaintiffs' contention that Ms. Guy was not capable of comprehending the nature of, and scope and effect, of scrawling a mark or "signature" on the deeds. Defendant's motion for dismissal was properly denied.

[2] Defendant claims that the trial court erred in allowing the intensive care nurses to describe in general terms the events of 25 September 1981 and to give their opinions as to Ms. Guy's mental capacity to execute the deeds. Defendant argues that because the nurses watched Ms. Guy through a video monitor, they were not qualified to give an opinion. Yet, the nurses could from their desk see the entire intensive care unit, and hear conversation within the unit. The nurses were responsible for watching and caring for Ms. Guy for an extended period of time (8 or more hours) on the day in question, and making notes on her condition. This gave them a reasonable or sufficient opportunity to observe her and to form an opinion as to her mental condition. "Evidence of mental condition before and after the critical time is admissible, provided it is not too remote to justify an inference that the same condition existed at the latter time." 1 Brandis on North Carolina Evidence § 127 (2d rev. ed. 1982), *cited in Ashley v. Delp*, 59 N.C. App. 608, 611, 297 S.E. 2d 905, 908 (1982). The nurses' testimony as to her behavior during their period of observation of her, within several hours of her signing the deeds, was not too remote. Admission of this testimony was not error.

The fact that both intensive care nurses were employees of the hospital and might be interested parties goes to the credibility of their testimony, which is a matter for the trial judge to determine.

[3] The defendant objects generally to testimony by Dr. Blount as an "expert," and to his testimony as to reactions to drugs and as to his opinion of Ms. Guy's mental health. None of these objections has merit.

Dr. Blount carefully qualified his role in diagnosing Ms. Guy's illnesses and treating her. He testified that he was the "attendant in charge," that he saw Ms. Guy when she was first admitted to the hospital, that he observed her on daily "rounds," and that he did not actually treat her. He did an initial diagnosis and then referred her to consultants who treated her specific problems. When asked whether he had an opinion as to whether she was capable of understanding the nature and consequences of her actions on 25 September, he said that he could only repeat his diagnosis (that she was an uncontrolled diabetic, had severe hypertension, and organic brain syndrome) and that she was "confused." Dr. Blount refused to give the opinion plaintiffs sought; rather, he gave a careful medical opinion which on the basis of his contact with her and training as a general practitioner he was well qualified to make.

Defendant complains that Dr. Blount described a drug, Mellaril, and its effects and uses with elderly patients, which prejudiced defendant. The trial judge struck this testimony on defendant's motion, and defendant has no reason now to claim error.

The trial court had before it competent evidence in the nurses' and doctor's testimony to support its findings of ultimate fact that Ms. Guy, when she signed or made her marks on the three deeds conveying her real properties to defendant, "did not understand what she was doing nor the nature or consequences of her acts, nor did she know what lands she was disposing of, to whom and how." The findings supported its conclusion of law that she lacked sufficient mental capacity to execute the deeds and that they are accordingly null and void.

Affirmed.

Judges WELLS and BECTON concur.