BRUCE BARBEE, Plaintiff v. JOHN LINWOOD JOHNSON and wife
BARBARA H. JOHNSON, Defendants

No. COA07-510

(Filed 6 May 2008)

### 1. Rules of Civil Procedure— Rule 12(b)(6)—treated as summary judgment

The trial court properly treated a motion to dismiss under Rule 12(b)(6) as a motion for summary judgment where it considered matters outside the pleadings.

### 2. Real Property— competency to sign lease-purchase agreement—summary judgment

There was not a material issue of fact concerning the mental competency of the signatory of a lease when she signed the lease, and the trial court did not err by granting defendants' motion for summary judgment. Depositions showed that the person signing the lease fluctuated between lucidity and confusion, but there was no indication that she was not lucid or lacked the mental capacity to appreciate what she was doing in the forty-five minutes leading up to the signing of the lease.

### 3. Real Property— consent to lease—ratification—summary judgment

There was a genuine issue of fact as to whether plaintiff knew that monthly payments received from defendants were made in accordance with an agreement in a lease, and the trial court erred by entering summary judgment for defendant. Although there was a genuine issue about whether plaintiff authorized his wife to sign his name to a lease, there was also an issue of ratification.

### 4. Real Property— lease—undue influence in obtaining signature

There was a genuine issue of fact as to whether defendants exercised undue influence in obtaining a signature on a lease, and the trial court should not have granted summary judgment for

defendants. It is clear that at least three of the seven factors indicative of undue influence exist in this case, as well as the issue of consideration for the lease's option to purchase.

Appeal by plaintiff from order entered 18 October 2006 by Judge W. Allen Cobb, Jr., in Onslow County Superior Court. Heard in the Court of Appeals 14 November 2007.

*Collins and Maready, P.A., by George L. Collins, for plaintiff-appellant.*

*Mast, Schulz, Mast, Johnson & Wells, P.A., by Bradley N. Schulz, and Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr., for defendant-appellees.*

BRYANT, Judge.

Bruce Barbee (plaintiff) appeals from an order entered 18 October 2006 granting John Linwood and Barbara H. Johnson's (defendants') motion to dismiss and motion for summary judgment. We reverse the trial court's order.

Plaintiff and Kathryn Barbee (deceased) owned vacation property on Topsail Island, North Carolina. On 3 April 2004, plaintiff visited Kathryn at Britthaven Rest Home in Jacksonville, North Carolina, where she was recovering from a hip fracture. The same day, defendants, defendants' friend Sharon Stanley, and Ms. Bobby Allen, a Johnston County notary public, came to the rest home to bring a Lease with an Option to Purchase (Lease) the Topsail property. Defendants were long time friends of plaintiff and Kathryn. The lease provided for a five-year rental period, during which defendants would pay $300.00 per month, and an option to purchase plaintiff and Kathryn's Topsail property by 31 January 2009 for $150,000.00. Kathryn, plaintiff, defendants, Ms. Stanley, and Ms. Allen engaged in discussion for approximately an hour before Kathryn signed her name to the Lease and, because plaintiff was unable to see, signed plaintiff's name as well. The document was signed in the presence of defendants, Ms. Stanley, and Ms. Allen.

On 6 December 2004, Kathryn died, and plaintiff inherited her estate. On 29 April 2005, plaintiff, in Onslow County District Court, filed a complaint alleging defendants leased his property pursuant to an oral agreement that allowed plaintiff to terminate defendants' lease "at will." Plaintiff also alleged that defendants failed to vacate

BARBEE v. JOHNSON

[190 N.C. App. 349 (2008)]

his property upon his demand. In answer, defendants alleged they were in possession of plaintiff's land pursuant to the valid terms of the Lease, and plaintiff's demand was wrongful. On 28 June 2005, the trial court, by consent of the parties, granted defendants' motion to transfer the case to superior court. On 2 June 2006, plaintiff filed an amended complaint acknowledging defendants' allegation of a valid Lease with an Option to Purchase but argued defendants failed to provide consideration for the option, committed overreaching, obtained Kathyrn Barbee's signature by undue influence, and breached a fiduciary duty. Plaintiff also alleged Kathryn lacked the mental capacity to enter into an agreement.

On 3 August 2006, defendants answered the amended complaint and simultaneously filed a motion to dismiss under North Carolina Civil Procedure Rule 12(b)(6). Defendants then filed a motion for summary judgment along with an affidavit from a registered nurse summarizing Kathryn's medical history, and deposition transcripts from Sharon Stanley, Bobby Allen, Barbara Johnson and Johnny Johnson. In response, plaintiff filed affidavits from, among others, Kathryn's treating physician, Dr. Ojebuoboh, and Paul Bryan, a family friend.

In an order dated 18 October 2006, the Onslow County Superior Court allowed defendants' motion for summary judgment and defendants' motion to dismiss. From that order, plaintiff appeals.

---

Plaintiff makes four arguments on appeal: (I) the trial court erred in simultaneously granting defendants' motion to dismiss and defendants' motion for summary judgment; and the trial court erred in granting summary judgment where genuine issues of material fact existed as to whether (II) Kathryn was competent to sign the agreement, (III) Kathryn was authorized to sign the Lease with an Option to Purchase for plaintiff, and (IV) defendants exercised undue influence over plaintiff and Kathryn.

I

[1] Plaintiff first questions whether the trial court erred in simultaneously granting defendants' motion to dismiss and defendants' motion for summary judgment. Plaintiff argues that simultaneously granting defendants' motion to dismiss pursuant to North Carolina Rule of Civil Procedure 12(b)(6) and defendants' motion for summary judgment is contradictory. Where a complaint fails to state a claim upon which relief can be granted there is no need to address the ques-

tion of summary judgment, and where a trial court reaches the question of summary judgment, the trial court has determined the complaint survives a 12(b)(6) motion.

Ordinarily, on a Rule 12(b)(6) motion, if the trial court considers matters outside the pleading, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" N.C. Gen. Stat. § 1A-1, Rule 12(b); *see Industries, Inc. v. Construction Co.*, 42 N.C. App. 259, 262-63, 257 S.E.2d 50, 53 (1979) ("when outside matter is presented to and not excluded by the court on a motion under . . . Rule 12(b)(6) . . ., it should be treated as one for summary judgment under Rule 56").

Here, the trial court stated that

[a]fter reviewing the pleadings, the file, affidavits submitted and hearing arguments of counsel, it appears to the Court that there is no genuine issue of material fact and that Defendant's Motion for Summary Judgment should be allowed; and, it further appearing to the Court that the Defendant's Motion to Dismiss should be allowed.

Because the trial court clearly considered matters outside the pleadings, we hold the trial court properly treated defendants' Rule 12(b)(6) motion to dismiss as a motion for summary judgment. Accordingly, this assignment of error is overruled.

II

[2] Plaintiff next questions whether the trial court erred in granting defendants' motion for summary judgment arguing there remains a genuine issue of material fact as to whether Kathryn was mentally competent to contract when she signed the Lease. We disagree.

We review a trial court order allowing summary judgment de novo. *Litvak v. Smith*, 180 N.C. App. 202, 206, 636 S.E.2d 327, 329 (2006). Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). As a general principle, summary judgment is a drastic remedy which must be used cautiously so that no party is deprived of trial on a disputed factual issue. *Billings v. Harris Co.*, 27 N.C. App. 689, 696, 220 S.E.2d 361, 367 (1975), *aff'd*, 290 N.C. 502, 226 S.E.2d 321 (1976). The moving party

bears the burden of establishing the lack of a triable issue of fact. *Pridgen v. Hughes*, 9 N.C. App. 635, 639, 177 S.E.2d 425, 428 (1970). But, the motion must be denied where the non-moving party shows an actual dispute as to one or more material issues. *Page v. Sloan*, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972).

> It has been said that an issue is material if the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail.

*Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971). And, "[e]vidence presented . . . is viewed in the light most favorable to the non-movant." *Summey v. Baker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citation omitted).

Where the issue is competency and the mental capacity required to enter into contractual agreements, this Court has stated the following standard:

> [A] person has mental capacity sufficient to contract if he knows what he is about, and that the measure of capacity is the ability to understand the nature of the act in which he is engaged and its scope and effect, or its nature and consequences, not that he should be able to act wisely or discreetly, nor to drive a good bargain, but that he should be in such possession of his faculties as to enable him to know at least what he is doing and to contract understandingly.

*Ridings v. Ridings*, 55 N.C. App. 630, 633, 286 S.E.2d 614, 616 (1982) (citing *Sprinkle v. Wellborn*, 140 N.C. 163, 181, 52 S.E. 666, 672 (1905)) (internal citations omitted). "Evidence of mental condition before and after the critical time is admissible, provided it is not too remote to justify an inference that the same condition existed at the latter time." *L. Richardson Mem'l Hosp. v. Allen*, 72 N.C. App. 499, 502, 325 S.E.2d 40, 43 (1985) (citation and quotations omitted). "Whether or not such evidence is too remote depends on the circumstances of the case interpreted by the rule of reason and common sense." *Matthews v. James*, 88 N.C. App. 32, 40, 362 S.E.2d 594, 600 (1987) (citations and internal quotations omitted).

Here, Dr. Ojebuoboh, Kathryn's authorized treating physician at Britthaven, testified during his deposition that Kathryn's mental

**BARBEE v. JOHNSON**

[190 N.C. App. 349 (2008)]

function tended to "fluctuate." "[S]ometimes she [was] lucid. . . . [S]ometimes she[] [was] very confused . . . ."

While Kathryn recuperated at Britthaven, Paul Bryan and his wife shuttled plaintiff to and from the rest home. In his deposition, Bryan testified that he observed Kathryn every day during her stay at Britthaven. Bryan testified that Kathryn "was in and out in her mind at times." At the time she was discharged on 6 April 2004—just three days after signing the Lease with an Option to Purchase, Bryan expressed his opinion to plaintiff that Kathryn should not be discharged. However, Bryan was not present at or near the time Kathryn signed the Lease.

Bobby Allen, the notary who certified Kathryn's signature, testified during her deposition that she spoke to Kathryn for approximately forty-five minutes prior to Kathryn signing the Lease. According to Allen, Kathryn "talked about her school years, and about what she had done in her lifetime." Allen further testified that she had no concern that Kathryn failed to appreciate what she was doing. Allen "felt comfortable about signing the papers."

These depositions tend to show that Dr. Ojebuohoh and Paul Bryan, over the course of Kathryn's stay at Britthaven, observed Kathryn fluctuate between lucidity and confusion. But, on 3 April 2004, specifically in the forty-five minutes leading up to the moment Kathryn signed the Lease, there was no indication Kathryn was not lucid or lacked the mental capacity to appreciate what she was doing.

Thus, we hold there is no genuine issue as to Kathryn's mental competence at the time she signed the Lease. Accordingly, plaintiff's assignment of error is overruled.

### III

[3] Next, plaintiff questions whether the trial court erred by entering summary judgment, arguing there remained a genuine issue of material fact as to whether Kathryn was authorized by plaintiff to sign the Lease on his behalf. We agree.

Plaintiff asserts that because of blindness he was unable to see the document signed 3 April 2005, did not authorize Kathryn to sign for him, and never knew the contents of the document until some point subsequent to his wife's death. Plaintiff further argues that the requirements under North Carolina General Statute 10B-20(e) for a designee to sign his name were not met.

BARBEE v. JOHNSON

[190 N.C. App. 349 (2008)]

"To form a valid contract there must be an offer and an acceptance, supported by adequate consideration." *George E. Shepard, Jr., Inc. v. Kim, Inc.*, 52 N.C. App. 700, 704, 279 S.E.2d 858, 861 (1981). "When there has been no meeting of the minds on the essentials of an agreement, no contract results." *Creech v. Melnik*, 347 N.C. 520, 527, 495 S.E.2d 907, 912 (1998).

On 3 April 2004, defendants presented to plaintiff and Kathryn a Lease. Defendant Barbara Johnson, in her deposition, testified that "Mrs. Barbee took the Lease Option and the Memorandum and she read it to [plaintiff]." And, after reviewing the agreement plaintiff said, "Kathryn, you sign for me. You always do." After which, plaintiff informed the notary present that Kathryn always signed for him "because he couldn't see."

Plaintiff, in his amended complaint, affidavit, and deposition, averred and testified that he "did not authorize . . . [his] wife to sign a lease and purchase option for . . . [him] and never knew the contents of the document . . . [defendants] contend was signed on . . . [3 April 2004] until sometime in 2005 subsequent to . . . [Kathryn's] death." Further, plaintiff argues that the signature of his name on the Lease was not properly notarized and could not support the validity of the contract.

Under North Carolina General Statute 10B-20(e)

If a principal is physically unable to sign or make a mark on a record presented for notarization, that principal may designate another person as his or her designee, who shall be a disinterested party, to sign on the principal's behalf pursuant to the following procedure:

(1) The principal directs the designee to sign the record in the presence of the notary and two witnesses unaffected by the record;

(2) The designee signs the principal's name in the presence of the principal, the notary, and the two witnesses;

(3) Both witnesses sign their own names to the record near the principal's signature;

(4) The notary writes below the principal's signature: "Signature affixed by designee in the presence of (names and addresses of principal and witnesses)"; and

(5) The notary notarizes the signature through an acknowledgment, oath or affirmation, jurat, or verification or proof.

N.C. Gen. Stat. § 10B-20(e) (2004).

While the record evidence consistently supports the argument another person made plaintiff's signature on the Lease, there is no evidence the signature was witnessed by two disinterested persons distinct from the notary herself. As there is insufficient evidence to hold the signature of plaintiff's name on the lease is a valid indication of his mutual assent to contract, there remains a genuine issue as to whether plaintiff authorized Kathryn to sign his name to the Lease.

Yet, given the existence of a genuine issue as to whether plaintiff authorized the signature of his name on the agreement, the issue of whether plaintiff, by conduct, ratified the contract still remains. For a principal "will not be permitted to repudiate the act of its agent as being beyond the scope of his authority, and at the same time accept the benefits arising from what he has done while acting in [the principal's] behalf." *Snyder v. Freeman*, 300 N.C. 204, 213, 266 S.E.2d 593, 599-600 (1980) (citation omitted).

The act of a principal will establish ratification of an unauthorized transaction of an agent where "(1) . . . at the time of the act relied upon, the principal had full knowledge of all material facts relative to the unauthorized transaction, and (2) . . . the principal had signified his assent or his intent to ratify by word or by conduct which was inconsistent with an intent not to ratify." *Carolina Equip. & Parts Co. v. Anders*, 265 N.C. 393, 400-01, 144 S.E.2d 252, 258 (1965).

The Lease provided that defendants "shall pay . . . to [plaintiff and Kathryn] . . . monthly rentals in the amount of **Three Hundred Dollars ($300.00)**." (Original emphasis.). Record evidence reflects that between 3 April 2004 and 6 February 2005, defendants paid and plaintiff accepted at least $300.00 per month. We hold plaintiff's acceptance of defendant's monthly rental payments constitutes conduct inconsistent with an intent not to ratify the Lease; therefore, only the issue of plaintiff's knowledge remains.

It is true that a cause of action premised on fraud or misrepresentation may be waived by a plaintiff's affirmative acts that amount to ratification. *Neugent v. Beroth Oil Co.*, 149 N.C. App. 38, 55, 560 S.E.2d 829, 840 (2002). It is equally true "that an act of the victim of any of these wrongs will not constitute a ratification of the transac-

tion thereby induced unless, at the time of such act, the victim had full knowledge of the facts and was then capable of acting freely." *Id.* at 55, 560 S.E.2d at 840 (citation omitted).

Here, plaintiff states he "never knew the contents of the document . . . [defendants] contend was signed on . . . [3 April 2004] until sometime in 2005 subsequent to . . . [Kathryn's] death." Additionally, during his deposition plaintiff responded to a question regarding why he believed defendants were paying him money each month by saying, "I . . . [thought] they wanted to help me, that's all."

It is for the trier of fact to resolve issues of credibility. *See Upchurch v. Upchurch*, 128 N.C. App. 461, 464, 495 S.E.2d 738, 740 (1998) (citation omitted). Thus, we hold the evidence provided, in the light most favorable to plaintiff, raises a genuine issue of material fact as to whether plaintiff knew the monthly payments he received from defendants were made in accordance with an agreement for a Lease.

IV

[4] Plaintiff next questions whether the trial court erred in granting defendants' motion for summary judgment arguing there remained a genuine issue of material fact as to whether defendants exercised undue influence to obtain Kathryn Baxter's signature on the Lease. We agree.

The North Carolina Supreme Court has described undue influence as follows:

> Undue influence is the exercise of an improper influence over the mind and will of another to such an extent that the action is not that of a free agent. It is the unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a manner inconsistent with his welfare. Confidential relationships are not limited to a purely legal setting but may be found to exist in situations which are moral, social, domestic, or merely personal. It is equally well settled that [a] course of dealing between persons so situated is watched with extreme jealousy and solicitude; and if there is found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party.

*Curl v. Key*, 311 N.C. 259, 265, 316 S.E.2d 272, 276 (1984) (internal citations and quotations omitted).

[B]ecause the existence of undue influence is usually difficult to prove, our courts have recognized that it must usually be proved by evidence of a combination of surrounding facts, circumstances and inferences from which a jury could find that the person's act was not the product of his own free and unconstrained will, but instead was the result of an overpowering influence over him by another.

*In re Will of Jones*, 188 N.C. App. 1, 9, 655 S.E.2d 407, 412-13 (2008) (citations omitted). Perhaps for these reasons our Supreme Court has identified seven factors as probative on the issue of undue influence.

1. Old age and physical and mental weakness of the person executing the instrument.

2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision.

3. That others have little or no opportunity to see him.

4. That the instrument is different and revokes a prior instrument.

5. That it is made in favor of one with whom there are no ties of blood.

6. That it disinherits the natural objects of his bounty.

7. That the beneficiary has procured its execution.

*Hardee v. Hardee*, 309 N.C. 753, 756-57, 309 S.E.2d 243, 245 (1983) (citation omitted).

Here, the record reflects defendants and the Barbees had been long-time friends, though not related. The Barbees owned one lot of vacation property on Topsail Island. Defendants, since March 1987, rented a lot adjacent to the Barbees and saw them nearly every weekend. At some point even the Barbee's only child, Bruce, moved into the vacation home. In September 1996, a storm destroyed defendants' vacation home, and they looked for different housing. Subsequently, tragedy struck the Barbees: Bruce Barbee died. In June 2003, pursuant to conversations between Defendant John Johnson and plaintiff, plaintiff and defendant entered into an oral agreement allowing defendants to rent the Barbee's vacation property.

According to the deposition testimony of Defendant Barbara Johnson, after many discussions between defendants and the Barbees regarding the sale of the vacation property, defendants

presented plaintiff and Kathryn a draft of the lease agreement, absent dollar amounts. Defendants later came to Britthaven with a completed agreement.

At the time of signing, Kathryn was seventy-eight years of age and recuperating in Britthaven rest home from a broken hip. On the afternoon of 3 April 2004, defendants, the notary, and another visitor spoke with Kathryn and plaintiff in Kathryn's room for approximately forty-five minutes, after which defendants spoke with the Barbees alone for twenty to twenty-five minutes. It was after this period, defendants invited the notary back into the room to witness Kathryn's signature. Defendants, as beneficiaries of the lease agreement, had been close friends of plaintiff and Kathryn but were not related to them.

From the evidence before the trial court, it is clear at least three of the seven factors indicative of undue influence exist in this case. Further there remains the issue of consideration for the Lease's option to purchase. The Lease allows defendants to purchase the Barbee's Topsail Island property for $150,000, though there is evidence the fair market value is approximately $450,000. In sum, this evidence raises a genuine issue of material fact as to whether defendants exercised undue influence in obtaining the signature of Kathryn Barbee.

For the foregoing reasons, the trial court's order is reversed.

Reversed.

Judges McGEE and HUNTER concur.